**Gary S. HOFFMAN, et al., Plaintiffs,**

**v.**

**BURROUGHS CORPORATION and CCH Computax Systems, Inc., Defendants.**

**Civ. A. No. CA–3–81–1415–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 21, 1982.

**546**

Jerome H. Ferguson, III, Dallas, Tex., Hamman, Benn & Miller, George W. Hamman, Marvin N. Benn, Chicago, Ill., for plaintiffs.

Sara J. Gourley, Sidley & Austin, Chicago, Ill., for defendants; Peter I. Ostroff, Sidley & Austin, Los Angeles, Cal., of counsel.

Theodore W. Daniel, William D. Sims, Jr., Jenkens & Gilchrist, Dallas, Tex., for CCH Computax Systems.

Morris Harrell, Rain, Harrell, Emery, Young & Doke, Dallas, Tex., Marshall M. Searcy, Dallas, Tex., for Burroughs Corp.

## ORDER

ROBERT M. HILL, District Judge.

This matter comes before the Court on the motion of defendant CCH Computax Systems, Inc. ("Computax") to transfer this action to the Southern District of California, pursuant to a forum selection clause contained in each of the several written agreements between Computax and the plaintiffs. Defendant Burroughs Corporation ("Burroughs"), by letter of counsel to the Court, has joined in Computax's motion and would consent to a transfer of the case to California. Having reviewed the parties' briefs and affidavits and the applicable law, this Court has concluded that Computax's motion for transfer should be granted.

### I.

This action concerns a computer system which, it is alleged, did not work. The plaintiffs are Gary Hoffman, Joe Pederson, Marion McBryde and Campbell Scott, and they are partners in HPMS Joint Venture, a partnership based in Dallas, Texas ("HPMS"), and the shareholders of Hoffman Pederson & McBryde, a Texas professional corporation engaged in public accounting ("HP & M"). Burroughs is a Michigan-based corporation engaged in the manufacture and selling of computer hardware and related software. Computax is a corporation based in San Diego County, California which, among other things, designs and licenses computer software for use by accountants on Burroughs computer equipment. According to the plaintiffs' complaint, in early 1979 Burroughs and Computax made a joint sales effort to HP & M regarding a computer system it could use, in the course of which they made certain

representations. Plaintiffs allege that on the basis of these representations, HPMS purchased a certain computer system from Burroughs and Computax, and then leased it to HP & M. It appears that HPMS purchased the computer hardware from Burroughs, and entered license agreements with Computax for accompanying software.

Later that year, HPMS arranged with Burroughs to purchase a larger, related computer system to replace the one previously acquired. HPMS entered into an agreement with Burroughs in October 1979. Subsequently, HPMS entered another license agreement with Computax for use of computer software to accompany the Burroughs equipment.

The agreement between HPMS and Burroughs contains a clause which provides that "[t]he laws of the State of Michigan shall govern this Agreement." Each of the license agreements between HPMS and Computax contains a clause which provides:

> It is mutually understood and agreed that this Agreement shall be understood and interpreted in all respects according to the law of the State of California. Further, it is understood that this Agreement shall be treated as though it were executed in the County of San Diego, State of California, and to have been performed in the County of San Diego, State of California. *The parties agree that any action relating to this License Agreement shall be instituted and prosecuted in the Courts of San Diego County, California....* [Emphasis supplied.]

Plaintiffs contend that the computer system was never fully effective and that it was subject to repeated breakdowns, and that they suffered damages as a result. They brought suit in this Court, with jurisdiction based on the diversity of citizenship of the parties. The complaint alleges causes of action for false, misleading or deceptive acts or practices pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, for fraudulent misrepresenta-

tions as inducement into contract, and for breach of implied warranties.

Computax, in its original answer and counterclaim, claimed that venue was improper in this district because of the forum selection clause in the license agreements, and that this Court should transfer the case to the Southern District of California in San Diego. In a later filed reply memorandum, Computax argues that this Court has authority to effect a transfer pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

## II.

The question before this Court is whether to enforce the forum selection clause in the agreements between Computax and HPMS and to transfer the entire action[1] to the Southern District of California. Before reaching this question, however, there are two preliminary matters to attend to.

First, it is clear that the present action is "related to" the agreements between Computax and HPMS, within the language used in the forum clause. Despite the plaintiffs' contention to the contrary, claims for fraudulent inducement into contract and breach of warranties impliedly made upon entering an agreement are undoubtedly related to that agreement. *Cf. Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 508–09, 94 S.Ct. 2449, 2451–2452, 41 L.Ed.2d 270 (1974) (claim of fraudulent representations concerning status of trademark rights was one "arising out" of contract for transfer to certain enterprises).

Second, plaintiffs argue that Computax has waived its venue defense by including a counterclaim to recover attorneys' fees in its answer. The argument lacks merit. As this Court has previously held, a defendant does not waive a venue defense by simultaneously filing a counterclaim. *Happy Mfg. Co. v. Southern Air & Hydraulics, Inc.*, 572 F.Supp. 891 (N.D.Tex.1982); *see Neifeld v. Steinberg*, 438 F.2d 423 (3d Cir.1971).

---

1. While the forum clause would only apply as to claims between Computax and HPMS, Burroughs has consented to a transfer of this action.

■ Proceeding, then, to a consideration of whether to enforce the forum clause, it may be observed at the outset that, at least in this district,[2] the issue is governed by federal law. *Taylor v. Titan Midwest Const. Corp.,* 474 F.Supp. 145, 147 (N.D.Tex. 1979). Specifically, the rules to follow in deciding whether to enforce a private agreement between parties as to choice of forum have been established by federal common law. On the other hand, the authority of a district court to transfer a cause is conferred by federal statute. The relevant provisions are 28 U.S.C. §§ 1404(a) and 1046(a). *See* discussion *infra.*

■ The leading case which discusses the standards for determining the enforceability of a forum selection clause is *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[3] There, the Supreme Court held that such clauses are prima facie valid, 407 U.S. at 10, 92 S.Ct. at 1913. The Court further held that the clauses should be enforced unless the resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching .... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15, 92 S.Ct. at 1916. The *Bremen* decision thus firmly established what had until that point been a trend of increasing judicial acceptance and hospitality towards the forum selection clause, as an acceptable private arrangement between contracting parties.

The consideration of whether fraud or overreaching was involved deals with whether the agreement was in fact freely bargained for. The court should look to the relationship between the parties to deter-

mine whether "overweening bargaining power" was exercised in the formation of the contract. 407 U.S. at 12, 92 S.Ct. at 1914; *see Taylor,* 474 F.Supp. at 149. Where there is an allegation of fraud in a dispute arising out of a transaction, this does not necessarily mean the forum clause is unenforceable, the Supreme Court stated in a refinement of that aspect of its *Bremen* opinion. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974). Rather, a forum clause will be unenforceable only if it is shown that "the inclusion of that clause in the contract was the product of fraud or coercion." *Id.*

The consideration of whether the enforcement of a forum clause might be "unreasonable" appears to be a variation on the doctrine of forum non conveniens, with the burden placed on the party seeking to avoid enforcement of the clause. The Supreme Court ruled in this connection that the chosen forum must be shown to be *"seriously inconvenient for the trial of the action"* (emphasis in original), 407 U.S. at 16, 92 S.Ct. at 1916, and that the resisting party should bear "a heavy burden of proof." 407 U.S. at 17, 92 S.Ct. at 1917. Since the claimed inconvenience would generally be foreseeable at the time the freely negotiated agreement was entered, "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be [so] gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 407 U.S. at 18, 92 S.Ct. at 1917.

■ In applying the *Bremen* "reasonableness" standard, courts have looked at several factors. These have included (1) inconvenience of the parties and witnesses; (2)

---

**2.** A few courts appear to have concluded that state law governs the question where the court's jurisdiction is based on diversity of citizenship, while other courts are unsettled on the matter. *See Taylor,* 474 F.Supp. at 147. Differences have arisen because the question is not purely a matter of venue according to legal standards, but involves the enforceability of a private contractual determination of venue. *See id.*

**3.** Although the *Bremen* opinion applies directly to cases brought under federal admiralty jurisdiction, it has been consistently applied to cases involving federal jurisdiction other than admiralty. *See Bense v. Interstate Battery System of America,* 683 F.2d 718, 721 (2d Cir. 1982).

the governing law, and (3) the availability of remedies in the chosen forum. *See Full-Sight Contact Lens Corp. v. Soft Lens, Inc.,* 466 F.Supp. 71, 73 (S.D.N.Y.1978); *cf. Gordonsville Industries, Inc. v. American Artos Corp.,* 549 F.Supp. 200, 206 (W.D.Va.1982); *Leasing Service Corp. v. Broetje,* 545 F.Supp. 362 (S.D.N.Y.1982). Again, the hardship must be significant for the enforcement of the clause to be unjust. "Mere inconvenience or additional expense" will not suffice, *Anastasi Bros. Corp. v. St. Paul Fire and Marine Ins. Co.,* 519 F.Supp. 862 (E.D.Pa.1981); *Full-Sight,* 466 F.Supp. at 73, since these are burdens which were allocated by the parties' private bargain.

■ Finally, as the third prong of the *Bremen* test, a court may decline to enforce a forum selection clause if enforcement would contravene a strong public policy of the forum. *See Boyd v. Grand Trunk Western Ry. Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (in action by injured employee based on the Federal Employers' Liability, contract between railroad and employee restricting employee's choice of venue held void); *Cutter v. Scott & Fetzer Co.,* 510 F.Supp. 905 (E.D.Wis.1981) (in action by dealer against manufacturer which was largely governed by the Wisconsin Fair Dealership Law, a law enacted to protect the interests of persons such as the plaintiff, court declined to enforce the forum clause).

### III.

■ In applying these principles to the present action, this Court finds that the forum selection clause should be enforced. First, the plaintiffs have not shown fraud or overreaching by Computax with respect to the forum clause. While the plaintiffs have alleged that certain fraudulent misrepresentations were made in connection with their agreement, they have not alleged that inclusion of the forum clause in the

contract was the result of fraud. To the contrary, Gary Hoffman stated in an affidavit that the choice of law and choice of forum clauses were never discussed in the negotiations between plaintiffs and Computax. Plaintiffs also point out that the clause is included in a form contract provided by Computax. Because the clause was boilerplate and it was not discussed, plaintiffs argue that they were taken unfair advantage of. Their argument might bear some significance if the plaintiffs were only callow consumers. *Cf. Broetje,* 545 F.Supp. 362. To all appearance, however, plaintiffs were sophisticated businessmen. Moreover, the form contract was only two pages in length, and the forum clause within is easily readable. *Cf. Bense,* 683 F.2d at 722. The plaintiffs cannot, on this basis, avoid the effects of the contract they freely entered into.

Second, Computax contends that it would not be unreasonable to maintain the action in San Diego, California, and this Court agrees. According to the affidavit of James McNeill, president of Computax, Computax is based there, and many of its employees and witnesses are located there. In addition, he avers that Burroughs maintains a branch sales office in San Diego and a regional sales office in the Los Angeles area, and that a number of Burroughs employees from these vicinities may be required as witnesses. Furthermore, the dispute is likely to be governed by California law and Michigan law, and not Texas law, in light of the choice of law clauses in the plaintiffs' contracts with Computax and Burroughs.[4] For the plaintiffs' part, they are of course located in Dallas and they contend that it would be burdensome to litigate their case in California. All together, it appears that California is at least as convenient a location for this action, and probably more so. Plaintiffs have clearly failed to meet their heavy burden of show-

---

4. In making this observation, this Court does not intend to decide any potential choice of law issues in this case, since they are not before it. The Court does, however, note that remedies would be available for fraudulent misrepresentation and breach of warranty claims, regard-

less which law applies. The Court further notes that the applicable law in this action would in any event be affected by its decision to transfer the action pursuant to 28 U.S.C. § 1406(a). *See infra.*

ing the unreasonableness of the chosen forum.

Finally, plaintiffs argue that this Court should decline to enforce the forum clause and deny the motion to transfer on the ground that Texas has a strong public policy which would be undermined by a transfer of the cause. In this regard, they observe that under Texas law choice of forum clauses are unenforceable. *See Fidelity Union Life Ins. Co. v. Evans,* 477 S.W.2d 535 (Tex.1972). However, it has already been established in this district that federal and not state law governs the enforceability of forum clauses for federal courts sitting in diversity jurisdiction. *Taylor,* 474 F.Supp. at 147. Consequently, that Texas policy is irrelevant to this Court.

Next, plaintiffs contend that this Court should recognize the public policy of Texas, as manifested by the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), to protect consumers from unfair trade practices, and should refuse to enforce the clause on this basis. However, as has been noted earlier, Texas law is likely to be inapplicable to this action, in light of the choice of law clauses in the contracts. In addition, to the extent that policies of the Texas DTPA might be implicitly contravened by enforcing a forum selection clause, that policy would be oriented towards protecting ordinary consumers, as compared with knowledgeable, experienced businessmen. *See* Sampson, *Distant Forum Abuse in Consumer Transactions: A Proposed Solution,* 51 Tex.L.Rev. 269 (1973). Thus, this argument too lacks merit.

In sum, this Court is of the opinion that this forum selection clause should be enforced.

## IV.

■ As a final matter, this Court should indicate whether it is transferring this action pursuant to 28 U.S.C. § 1404(a) [5] or 28 U.S.C. § 1406(a).[6] Section 1404(a) permits transfers from a district court where venue is proper to another court where a transfer would serve the convenience of the parties and witnesses. Section 1406(a) requires a court to either dismiss or transfer a case which was filed in the wrong venue.

Courts have differed as to how to treat a motion to transfer on the basis of a forum selection clause.[7] Some courts have dealt with such a motion to transfer as are pursuant to section 1406(a).[8] Some have treated it as a motion pursuant to section 1404(a).[9] At least one court avoided the issue by granting a transfer without referring to either statute.[10] An another court granted a transfer simultaneously under sections 1404(a) and 1406(a).[11]

The statutory selection may be more than academic. The statutory basis for transfer in a diversity of citizenship case may determine what the applicable law is, including whether the choice of law rules of the state of the transferee court or the transferor court apply. *See Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1109 (5th Cir. 1981) (citing *Martin v. Stokes,* 623 F.2d 469 (6th Cir.1980) approvingly for this proposition). That is, at least in this circuit, the choice of law rules of the transferor court's

**5.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**6.** Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**7.** It may be noted that questions concerning the enforcement of a forum clause often are raised

and treated as motions to dismiss. *E.g. Bense,* 683 F.2d 718; *Anastasi Bros.,* 519 F.Supp. 862; *Gordonsville,* 549 F.Supp. 200.

**8.** *E.g. Cutter,* 510 F.Supp. 905; *Full-Sight,* 466 F.Supp. 71 (court also described section 1404(a) as an alternative basis for transfer).

**9.** *E.g. In re Fireman's Fund Ins. Co., Inc.,* 588 F.2d 93 (5th Cir.1979) (circuit court affirmed lower court's granting of transfer pursuant to section 1404(a); *Broetje,* 545 F.Supp. 362.

**10.** *Taylor,* 474 F.Supp. 145.

**11.** *Kline v. Kawai America Corporation,* 498 F.Supp. 868.

state would apply in a section 1404(a) transfer, while the choice of law rules of the transferee court's state would apply in a section 1406(a) transfer for improper venue (as long as the transfer is not because of lack of personal jurisdiction over the defendants). *See id.*

▮ While it appears that a transfer on the basis of a forum selection clause may be accomplished pursuant to either provision, this Court is of the opinion that such a transfer is more appropriately treated under section 1406(a). It is true that venue in the plaintiff's chosen court, while contrary to the contractual agreement, may satisfy the legal requirements for venue of 28 U.S.C. § 1391. However, the nature of a motion to enforce a forum selection clause is that venue is wrong in the first instance, *see* 15 Wright, Miller & Cooper, Federal *Practice and Procedure* § 3847 (1982), and a plaintiff should not be allowed to gain an advantage by bringing suit in the wrong court.

Accordingly, pursuant to 28 U.S.C. § 1406(a), this Court orders the transfer of this action to the United States District Court for the Southern District of California.

It is so ORDERED.