Sheldon T. FRIEDMAN, Plaintiff,

v.

WORLD TRANSPORTATION, INC., an Arizona Corporation, Crst, Inc., a Foreign Corporation, Investors Transportation Corp., an Arizona Corporation, Herman Finesod, James Haber, Coast Financial Services, Inc., an Oregon Corporation, Trager, Glass & Company, Albert P. Fosha, Individually and d/b/a Worldco Services Group, Inc., Defendants.

No. 85 C 8074.

United States District Court,
N.D. Illinois, E.D.

May 8, 1986.

Edward A. Berman, Berman, Roberts & Kelly, Robert J. Zaideman, Epstein, Zaideman & Esrig, Chicago, Ill., for plaintiff.

Warren S. Radler/Dale R. Crider, Rivkin, Radler, Dunne & Bayh, Daniel I. Schlessinger/Mark G. Krum, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In 1984 Sheldon Friedman ("Friedman") was looking for a tax shelter and found one orchestrated by defendant World Transportation, Inc. ("World"). He borrowed $450,-000 to invest in six trucks. This tax scheme turned out to be scam, however. He alleges in his eight-count amended complaint that World and the other defendants defrauded him, and he seeks recovery under a potpourri of federal and state causes of action, including the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*, better known as RICO. Various motions to dismiss are now before the Court. We need not address the substantive issues these motions raise because we find that one procedural issue disposes of the matter. For the reasons stated below, we grant the motion of several defendants to transfer this case to the Southern District of New York under 28 U.S.C. § 1406(a).

A. *Facts*

We take the following facts from the amended complaint and the exhibits attached to it, and from some of the exhibits attached to the parties' briefs. We need only sketch the outlines of the alleged scam. In 1984 World offered wealthy investors seeking to shelter their income a chance to buy "fully equipped Class 8, over-the-road diesel powered tandem axle tractors" plus related equipment for the supposedly bargain-basement price of $88,-000 each. From what we can tell, the investors needed only to hand over the money and remember to make the appropriate deductions on their tax returns; World and the other defendants would do the rest. One of the since-dismissed defendants, Investors Transportation Co. ("ITCO") was to manage the trucks. The trucks were "guaranteed" to generate revenues of $.75 per mile for 75,000 miles annually, while costing only $.60 per mile. This income was supposed to cover payment of loan installments. The investment was to produce substantial tax benefits, including an investment tax credit and deductions for accelerated depreciation, operating expenses, and interest on the loan. Instead the investment was allegedly a bust and prompted this suit.

Friedman was one of about ninety investors who signed up. He entered into several agreements. The main one was the "Purchasing Agreement," in which Friedman contracted to buy two trucks. He also entered into a "management agreement," empowering ITCO to manage the trucks, and a promissory note and a security agreement with an Oregon bank and defendant Coast Financial Services ("Coast"). The Purchasing Agreement contained the following "forum selection clause":

> Except in respect to an action commenced by a third party in another jurisdiction, Purchaser and Seller agree that any legal suit, action, or proceeding brought by one party hereto against another party hereto arising out of or relating to this Agreement shall be brought exclusively in a United States District Court in the State of New York or, if such court lacks jurisdiction, in the Supreme Court of the State of New York. Purchaser and Seller hereby accept the jurisdictions of such courts for the purpose of any such action or proceeding, and agree that venue for any action or proceeding brought in the State of New York shall lie in the Southern District of New York or the City of New York, as the case may be.

The other agreements contained *not* forum selection clauses like the above one, but venue waiver clauses, requiring Friedman to waive venue and personal jurisdiction objections to any suits brought against him in various forums, such as Arizona and Oregon.

Despite the forum selection clause of the Purchasing Agreement, Friedman, an Illinois resident, filed his suit here. He is the only plaintiff. This is one of several related suits brought by disgruntled investors. One, a purported class action on behalf of ninety investors, including Friedman, was filed in the Southern District of Florida. Relying on the above forum selection clause, the Florida Court transferred the case to New York. *See Adelson v. World Transportation, Inc.*, 631 F.Supp. 504 (S.D.Fla.1986). Friedman reports that other related suits are pending in Alaska and Colorado. As far as we know, those suits have not as yet been transferred.

World and five other defendants have moved to dismiss the case under Fed.R. Civ.P. 12(b)(3) or transfer under 28 U.S.C. § 1406(a), arguing that the forum selection clause renders venue in this district improper. The other defendant who has responded to the complaint, Coast, has not joined this motion but has not objected to it. We agree that the case should be transferred, but must deal with several issues before entering the transfer order.

B. *Waiver*

Friedman contends that World waived the venue issue by not raising it in its answer or original motion to dismiss. World answered the amended complaint on

December 30, 1985 without mentioning venue. It filed a motion to dismiss, raising various substantive attacks, on January 7, 1986. Three days later, on January 10, World amended its motion to dismiss to include the venue defense. Friedman says it was too late to do so.

■ The Federal Rules place a premium on raising such threshold procedural issues early in a lawsuit. Rule 12(g) requires a defendant to raise all motions under 12(b)(2)–(5) at one time, under penalty of waiver. Rule 12(h)(1) provides that a defense of improper venue, among others, is waived (A) if omitted from a motion described in Rule 12(g), or (B) if it is neither made by motion "nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." In sum, when a venue defense is raised neither in the answer nor in a timely motion to dismiss, it is waived. *See generally* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* §§ 3826, 3829 (1976).

■ That the venue defense was presented in the *amended* motion to dismiss rather than in the original one filed three days sooner presents no problem. A party can amend a motion to dismiss to raise an omitted ground if he or she acts promptly and before the court rules on the original motion. *See MacNeil v. Whittemore,* 254 F.2d 820, 821 (2d Cir.1958); *Martin v. Lain Oil & Gas Co.,* 36 F.Supp. 252, 255 (E.D.Ill.1941); 5 Wright & Miller, *Federal Practice & Procedure,* § 1389 (1969), at 847–48. The cases reason that an amendment made just a few days following the motion is consistent with the spirit of Rule 12(h) and neither prejudices the plaintiff nor burdens the court. Defendants' amendment came three days after they made their original motion and before a responsive brief was to be filed, and therefore is timely under these standards.

■ Nor was defendants' failure to mention venue in their answer fatal in light of their filing of the motion to dismiss. In any event, Rule 12(h)(1)(B) makes clear that the answer date is not the do-or-die day for waiver purposes. The omitted defense may be raised in an amendment to the answer made under Rule 15(a) as of right up to 20 days after the answer is filed. The amended motion to dismiss was filed just 11 days after the answer was. In effect, by filing the amended motion the defendants amended their answer as of right to raise this defense. To rule otherwise would raise form over substance. The purpose of the Rule 12 procedure is to ensure that such motions are raised promptly, before the answer is "locked in" except by leave of court. Allowing defendants' motion is consistent with this scheme of the rule. Thus, whether considered as an amendment to the motion to dismiss or to the answer, the venue defense was raised on time and not waived.

C. *Exception*

Friedman next argues that by its own terms the forum selection clause does not apply because of its "exception" clause. As quoted above, the clause binds Friedman to sue World exclusively in New York for any suit "arising out of or relating to" the Purchase Agreement, "except in respect to an action commenced by a third party in another jurisdiction." Friedman notes that defendant Coast sued him on the promissory note in Oregon.[1] Coast is a third party. He concludes from these two facts that this suit is one commenced by a third party outside of New York which therefore invokes the exception. We disagree.

At the outset, we observe that the meaning and purpose of this clause is unclear. If the clause means merely that third parties are not bound by the forum selection clause, it is useless since the clause could not bind third parties anyhow. Perhaps it

---

**1.** The Oregon court transferred that case to this district under 28 U.S.C. § 1404(a), reasoning in part that that suit was really a compulsory counterclaim to Friedman's suit here. This court took the case as "a related" case as defined by our Local Rule 2.31.

means that if both Friedman and World were joined as defendants in a suit by a third party, they could cross-claim in that forum. Or perhaps it means that if a third party sued Friedman, he could file a compulsory counterclaim in that suit relating to the Purchase Agreement and join World.

■ Whatever it means, the exception clause surely does not mean that the forum selection clause does not apply in this case. Friedman brought this suit (initially in state court) *before* Coast filed its suit.[2] Under any definition, the exception clause could not apply because *no third party suit existed when Friedman sued World.* Coast's subsequent suit and defendants' removal of this suit clearly do not then trigger the clause retroactively. Indeed, Friedman himself argued to the Oregon Court which transferred the suit that it was properly a compulsory counterclaim to his suit previously filed in Illinois. This essentially admits that it was not properly a separate action brought by a third party, but was ancillary to the suit *he* brought himself here. In sum, when filed this suit was plainly one which was controlled by the forum selection clause and not its exception.

### D. *Enforceability*

Having decided that the forum selection clause is properly invoked, we must now decide whether to enforce it. Courts used to frown on such clauses, but now their enforcement is the rule rather than the exception. The leading case is *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), in which the Supreme Court enforced a forum selection clause in an admiralty case. The Court held that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting par-

ty to be unreasonable under the circumstances." 407 U.S. at 10, 92 S.Ct. 1907. It suggested a few situations in which a court ought not to enforce such clauses. If the clause was induced by fraud, undue influence, or overweening bargaining power, *see id.* at 12, 92 S.Ct. at 1914, it might be uneforceable. It might also be unreasonable and unenforceable if it contravenes an important public policy of the forum or if the chosen forum "is *seriously* inconvenient for the trial of the action." *Id.* at 16, 93 S.Ct. at 1916 (emphasis in original).

While *The Bremen* was an admiralty case, set in an international context, its teachings are not limited to such cases. In *Scherk v. Alberto-Culver,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Court followed *The Bremen* in enforcing a forum selection clause (one requiring arbitration in Paris) in a case brought under the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. *Accord Clinton v. Janger,* 583 F.Supp. 284 (N.D.Ill.1984) (Hart, J.) (applying *The Bremen* in RICO suit involving international parties). While *Scherk,* like *The Bremen,* involved international parties, lower federal courts have consistently applied *The Bremen* analysis to cases involving only domestic parties and causes of action other than admiralty. *Bense v. Interstate Battery System of America,* 683 F.2d 718 (2d Cir.1982) (antitrust); *Hoffman v. Burroughs Corp.,* 571 F.Supp. 545 (N.D. Tex.1982) (deceptive trade practices and breach of warranty); *D'Antuono v. CCH Computax Systems, Inc.,* 570 F.Supp. 708 (D.R.I.1983) (same); *Taylor v. Titan Midwest Construction Corp.,* 474 F.Supp. 145 (N.D.Tex.1979) (contract). Finally, we add that the nearly identical case filed in Florida, in which Friedman is a member of a not-yet-certified class, applied *The Bremen* analysis. *See Adelson,* 631 F.Supp. at 507.[3]

---

**2.** The state court suit was filed August 9, 1985 and removed to this court on September 18, 1985. Coast sued Friedman in Oregon state court on August 16, 1985, dismissed it, and filed again in Oregon Federal Court on August 29, 1985.

**3.** One of the cases *Adelson* relied upon, *Stewart Organization, Inc. v. Ricoh Corp.,* 779 F.2d 643

(11th Cir.1985) was recently vacated pending rehearing *en banc.* 785 F.2d 896 (11th Cir. 1986). This change does not undermine *Adelson,* since its analysis is valid under the caselaw we have cited in this opinion. In any event, we suspect *Stewart* is being reheard not because it misapplied the criteria of *The Bremen* but be-

We turn, then, to Friedman's arguments that he satisfies *The Bremen's* criteria for rejecting the forum selection clause. His contention that the contract was the product of "overweening bargaining power" is simply not credible. He is plainly a wealthy and sophisticated investor. The subscription documents reveal that his annual income was well over $200,000, and his net worth over $1,000,000. He also has averred that an accountant advised him as to this investment. We follow the many cases, including *Adelson*, at 507, that held that the *Bremen* exceptions do not apply where the plaintiff is a sophisticated individual or company. *See, e.g., Hoffman*, 571 F.Supp. at 549; *D'Antuono*, 570 F.Supp. at 714. While the court should be wary of enforcing "boilerplate" language (which we assume this clause to be for argument's sake), *see The Bremen*, 407 U.S. at 12 n. 14, 92 S.Ct. at 1914, this factor carries little weight where the party is sophisticated and can deal at arm's length and where the other *Bremen* factors do not apply. *See D'Antuono*, 570 F.Supp. at 714; *Taylor*, 474 F.Supp. at 149.[4]

Nor has Friedman carried his "heavy burden", *see The Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917, of showing that New York is a *"seriously* inconvenient" forum. To sustain his heavy burden, Friedman must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold [him] to his bargain." *The Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917. Friedman clearly does not

meet this strict standard. New York is related to the suit, as several of the defendants are there. While other defendants would have to travel there in order to defend, they also have to travel here, since they are located outside of Illinois. A transfer would thus inconvenience them little at most, and in any event, they have not objected to a transfer. The only party inconvenienced is Friedman, but his inconvenience alone cannot satisfy *The Bremen's* standards.[5] He clearly can afford to litigate in New York; he cannot and does not argue that litigating there will "be so gravely difficult and inconvenient" that he will as a practical matter lose his day in court. True, as he argues, World will enjoy the advantage of playing on home turf, but that advantage by itself is not enough under *The Bremen*. If playing a home game was so important to him, he should have tried to bargain for a different clause or look elsewhere for tax-saving schemes. In any event, a New York forum will give some benefit to Friedman as well. He can team up with the other plaintiffs already there in launching a combined attack on defendants. But even though this gain may not offset Friedman's net loss of convenience, he fails to come close to the standards of *The Bremen*.

We are also not persuaded by Friedman's argument that because the forum selection clause appears in just one contract, it should not be enforced to affect non-parties to the contract. First, we are enforcing it against Friedman for *his* suit, not against the other parties, who would have been sued in New York anyway if Friedman would have complied with his

---

cause of the question posed in that case under the *Erie* doctrine.

**4.** Friedman mistakenly relies on *Cutter v. Scott & Fetzer Co.,* 510 F.Supp. 905 (E.D.Wis.1981), which depended on unique considerations of Wisconsin state law and public policy. *Horning v. Sycom*, 556 F.Supp. 819 (E.D.Ky.1983) also does not apply, as the court there found a great disparity in bargaining power, and, in any event, applied Kentucky law rather than *The Bremen* in deciding the issue.

**5.** This is not a typical transfer case under 28 U.S.C. § 1404(a) where the court has broader discretion, and generally will refuse to transfer when doing so would merely shift the inconvenience from one party to another. Here Friedman agreed to the inconvenience in his contract. The question, then, is not whether New York is the most convenient forum, or at least much more convenient than this one. Rather, the question is whether New York provides a "seriously inconvenient" forum, one that would deprive Friedman of his day in court.

contractual duty to file there. This is *Friedman*'s suit; *he* is a party to the purchase contract; and this suit plainly names the "Seller" as a defendant and "arises out of or relates to" the purchase contract. Friedman cannot escape his resulting contractual obligations under the forum clause simply because he happened to join additional parties who did not sign that contract. In other words, the point is not, as Friedman argues, that they did not agree to the contract and should not be bound by it. Rather, he *did* agree to it and *is* bound to it for *his* suit naming World as a defendant. Had he sued these other third-party defendants in New York, they could not have objected to Friedman's compliance with the forum clause;[6] similarly, they have little to say here regarding our decision to hold Friedman to his bargain. In any event, we observe that none of these third parties have objected to the proposed transfer; Friedman's protests on their "behalf" thus ring hollow.

■ Second, we reject Friedman's related contention that this forum selection clause conflicts with clauses in the other contracts, such that enforcement of it rather than the others would be arbitrary. There is no conflict. Friedman confuses forum selection clauses with venue waiver clauses. The other contracts do not provide for litigation *exclusively* in one forum, as the Purchase Agreement does. They provide for *waiver* of venue objections for suits brought *against* Friedman in various states. In general, they do not *require* that suits be brought *by* Friedman in those states, and specifically they do not prevent Friedman from suing in New York.

■ Third, what little precedent there is on this "multi-contract" issue supports enforcement of the forum selection clause. Judge Hart recently enforced a forum selection clause in a case where defendants who were not parties to the contract were transferred as well. *See Clinton*, 583 F.Supp. at 290. Furthermore, the *Adelson*

court, construing the *same* documents that are involved here, found that the Purchasing Agreement was the central document in the dispute. The core of the case is fraud relating to the purchase of the trucks, and the other documents and defendants relate to and flow from this allegedly fraudulent purpose. "The one document which logically connects all the defendants to the plaintiffs, in this action, is the Purchase Agreement." *Adelson*, at 508. We agree with *Adelson* that it is the controlling document and that its forum selection clause should bind Friedman. *Lulling v. Barnaby's Family Inns, Inc.*, 482 F.Supp. 318, 320–21 (E.D.Wis.1980), relied upon by Friedman, is not relevant, since the document there containing the forum selection clause was not "the basic contract" between the parties, and, moreover, there were public policy concerns there which as we will now see are absent in this case.

■ The last *Bremen* factor we need to consider is "public policy." *The Bremen* authorizes a court to decline to enforce a forum selection clause if it "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15, 92 S.Ct. at 1916. Friedman essentially makes a public policy argument when he claims that the Securities Acts of 1933 and 1934 prevent enforcement of the clause. The latter Act says in relevant part:

> Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc; *see also* 15 U.S.C. § 77n (similar provision in 1933 Act). Friedman points out that the Securities Acts have liberal venue provisions which allow him to sue here, certainly a correct proposition. However, he concludes, incorrectly, that the forum selection clause is a "provision"

---

**6.** Of course, they could have raised normal objections under 28 U.S.C. § 1404(a) if they had some. But they could not have complained that because they were not parties to the contract, they could not be sued in New York.

binding him "to waive" his choice of venue, thus forcing him to waive compliance with the Securities Acts, and that it is therefore void under the above statutory language. He relies heavily on *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that an arbitration clause was void where it worked to deprive a securities holder of the right to sue in federal court under the 1933 Act. *Wilko*'s application to the 1934 Act is in some doubt in light of dictum in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 513-14, 934 S.Ct. 2449, 2454-55 (1974); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, —— n. 1, 105 S.Ct. 1238, 1240 n. 1, 84 L.Ed.2d 158 (1985), but has been applied to the 1934 Act in the Seventh Circuit, *see Weissbuch v. Merrill, Lynch, Pierce, Fenner & Smith*, 558 F.2d 831, 833-35 (7th Cir.1977), and we recently followed *Weissbuch* in a case brought under the 1934 Act. *See Winkler v. Merrill, Lynch*, —— F.Supp. ——, No. 85 C 9120, slip op at 6-7 (N.D.Ill. April 25, 1986). However, even if *Wilko* applies to both Acts, it does not apply here because of the quantum difference between the *arbitration* clause of *Wilko* and the *venue* clause of this case.

The plaintiffs in *Wilko* contracted away their right to sue in federal court. The Court was concerned with this total sacrifice of a judicial forum, and felt that arbitration might not adequately protect plaintiffs' rights. 346 U.S. at 434-46, 74 S.Ct. at 186-87. The waiver there was therefore considered profound. We agree with the *Adelson* court, at 506-07, that these concerns are irrelevant in this context. Friedman has not contracted away a right to a judicial forum. He has merely contracted to be in *one* judicial forum. Nothing suggests he will get a poorer hearing in New York than here. Moreover, in contracting to sue in New York, he did not "waive compliance" with the Act; he exercised *then* instead of later the choice of judicial forum the Act gives him. *See id.*

We observe also that the gist of *Scherk* is that *Wilko* is not to have broad application outside of the context of that case. Moreover, both *Scherk* and *The Bremen* indicate strong judicial support for *venue* selection clauses. *Wilko* was decided during the heyday of judicial opposition to venue selection clauses. Given the Supreme Court's strong modern endorsement of venue selection clauses, we think it would be unwise to extend *Wilko* beyond the arbitration context to the venue context.

This, of course, is not to say that forum selection clauses are valid in all contexts. For example, in *Boyd v. Grand Trunk Western Railroad Co.*, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949), which Friedman relies on, the court refused to enforce a venue selection clause in an FELA case. There the recently injured employee signed a forum selection clause after being given fifty dollars by his employer as an advance on a proposed settlement. The court obviously viewed the clause as a trick by the employer to avoid cheaply liability which had already matured. It was motivated by the great disparity of bargaining power between employer and employee. Even under *The Bremen*'s analysis, the clause in *Boyd* would have been unenforceable. The compelling facts which motivated the Court in *Boyd* are absent here.

In sum, we join *Adelson* in holding that neither *Wilko* nor any other public policy prevents application of the forum selection clause.

### E. *Judicial Economy*

■ We hasten to add that judicial economy strongly favors a transfer as well. Friedman is a proposed class member in *Adelson*, now pending in New York. Whether that class is certified and, if so, whether Friedman opts in or out remain to be seen, but it nonetheless makes good sense to litigate the two cases together. Friedman makes much of the fact that several related cases are pending all over the country, but that fact actually *favors* a transfer. This case appears relatively complex. It is much more efficient for one judge rather than four or five to master it. Our transfer of this case to the district

where the class action is pending will help achieve this goal of efficiency.

F. *Conclusion*

For the foregoing reasons this case, and the consolidated one, No. 86 C 75, are hereby transferred to the Southern District of New York under 28 U.S.C. § 1406(a).[7] We of course do not express an opinion on the various substantive grounds in the motions to dismiss. It is so ordered.

7. We agree with defendants that a transfer under 28 U.S.C. § 1406(a) is better than a dismissal. *See Mikols v. U.S. Amada Ltd.,* 84 C 2540, slip op. at 3 (N.D.Ill. May 20, 1985) (Plunkett, J.) [available on WESTLAW, DCTU database]; *Hoffman,* 571 F.Supp. at 550–51; *D'Antuono,* 570 F.Supp. at 710–11.