**L.A. PIPELINE CONSTRUCTION COMPANY, an Ohio Corporation, Plaintiff,**

**v.**

**TEXAS EASTERN PRODUCTS PIPELINE COMPANY, A DIVISION OF TEXAS EASTERN TRANSMISSION CORPORATION, a Delaware corporation, doing business in Indiana; and Texas Eastern Transmission Corporation, a Delaware corporation, authorized to do and doing business in Indiana, Defendants.**

Cause No. IP 88–323–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 28, 1988.

Donald J. Graham, Bingham Summers Welsh & Spilman, Indianapolis, Ind., David W. Johnson, Lewis Ciccarello & Friedberg, Charleston, W.Va., for plaintiff.

Robert S. Hulett, Philip B. McKiernan, Hackman McClarnon & McTurnan, Indianapolis, Ind., for defendants.

ENTRY

McKINNEY, District Judge.

This cause came before the Court on the defendants' Motion to Dismiss or in the Alternative to Transfer Pursuant to Rule 12(b)(3) and 28 United States Code Section 1406(a). For the reasons stated below; defendants' Motion is GRANTED with specific instructions at the conclusion of this Entry.

FACTS

The defendants' Motion arose in the course of a diversity suit involving a con-

struction contract. Plaintiff L.A. Pipeline Construction Company ("L.A. Pipeline") is an Ohio corporation with its principal place of business in Belpre, Ohio. Its sole shareholder serves as president and supervises a permanent staff of six employees. Defendants Texas Eastern Transmission Corporation and Texas Eastern Products Pipeline Company operate a pipeline system through ten States [1]. (The Court will refer to defendants collectively as "Texas Eastern.") Texas Eastern is incorporated in Delaware with its principal place of business in Houston, Texas.

L.A. Pipeline and Texas Eastern entered into an agreement whereby L.A. Pipeline was to remove a section of Texas Eastern's underground pipeline in the vicinity of the Indianapolis International Airport and install a new section nearby. The process which preceded the parties' agreement was one of competitive bidding, during which Texas Eastern furnished L.A. Pipeline with bid documents containing specifications, drawings and other provisions. One of these provisions was a forum-selection clause, the subject of the Motion now before the Court. Before accepting proposals, Texas Eastern conducted a pre-bid meeting which L.A. Pipeline attended. Subsequent to the meeting, L.A. Pipeline submitted a proposal and Texas Eastern awarded it the job.

During the course of the project, the parties fell into dispute. L.A. Pipeline claims that Texas Eastern supplied pipe that was unsuitable for the project; Texas Eastern claims that L.A. Pipeline's placement of the pipe deviated from the contract requirements. Texas Eastern declared L.A. Pipeline in default, terminated the contract and hired another contractor to complete the work. L.A. Pipeline maintains that the termination was wrongful and is suing for compensation for the work performed. Texas Eastern moved to dismiss or transfer the suit. L.A. Pipeline resists the motion.

The forum-selection clause in question appears on page 9 of a section of the Contract Documents entitled "General Conditions":

> 1.15.2 Any and all actions requiring interpretation or enforcement of the Contract Documents or otherwise concerning the subject matter of the Contract Documents shall for the convenience of Company be heard in state or federal courts with subject matter jurisdiction sitting in Harris County, Texas, and the parties hereby submit to the personal jurisdiction and venue of such courts for such purposes.

Another relevant section of the Contract Documents is as follows:

> 1.15 GOVERNING LAW
>
> 1.15.1 Contractor and Company expressly acknowledge and confirm that the Contract has been negotiated in part in the State of Texas, that it has been presented by Contractor as a proposal to Company in Houston, Texas, and that the laws of the State of Texas and of the United States of America when applicable shall govern and control the construction, interpretation and enforcement of the Contract Documents, excluding any conflict of law rule which would refer any matter to the laws of a jurisdiction other than the State of Texas.

General Conditions at 8–9.

## DISCUSSION

### Texas Law

In resisting enforcement of the forum-selection clause, plaintiff L.A. Pipeline first asserts that the clause is invalid under Texas law. This argument is incorrect in light of the recently decided *Stewart Organization, Inc. v. Ricoh Corporation,* — U.S. —, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Stewart*, the Supreme Court held that federal law, specifically 28 United States Code Section 1404(a), governs a district court's decision of whether to give effect to the parties' forum-selection clause. *Id.* — U.S. at —, 108 S.Ct. at 2245–46. Although the defendants in the present case have moved for dismissal or

---

**1.** Defendants' system runs through Arkansas, Illinois, Indiana, Kentucky, Louisiana, Missouri, New York, Ohio, Pennsylvania and Texas. Affidavit of Donald L. Kincaid at 2, para. 2.

transfer under 28 U.S.C. § 1406(a), this Court believes that federal law is supreme here as well. Texas law, no matter how interpreted, cannot therefore control the issue of whether this action is dismissed or transferred.

Plaintiff next contends that even if controlling, federal law renders the forum-selection clause unenforceable. The clause is invalid, says the plaintiff, for several reasons: the parties did not negotiate it, the clause is "nothing more than boilerplate language inserted in a form contract by the defendants", and the defendants possessed "overweening bargaining power as compared to the plaintiff". Memorandum of L.A. Pipeline Construction Company in Opposition to Defendants' Motion to Dismiss, or in the Alternative, to Transfer (hereinafter referred to as Memorandum of L.A. Pipeline) at 11. Plaintiff, however, fails to convince the Court of these contentions.

The leading case in this area is *M/S Bremen v. Zapata Off–Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). This was an admiralty case involving an international agreement with a forum-selection clause that provided for the resolution of any dispute before the London Court of Justice. In this context the Supreme Court said that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances". *Id.* at 10, 92 S.Ct. at 1913 (footnote omitted). "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect." *Id.* at 12–13, 92 S.Ct. at 1914–15 (footnote omitted).

In addition to suggesting that fraud, undue influence and overweening bargaining power could negate a forum-selection clause, the Court said that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision". *Id.* at 15, 92 S.Ct. at 1916. The Court also noted that a specified forum may be unreasonable and unenforceable if it is seriously inconvenient for trial. *Id.* at 16, 92 S.Ct. at 1916. But "[i]n such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain". *Id.* at 18, 92 S.Ct. at 1917.

Plaintiff L.A. Pipeline has failed to allege facts to this Court's satisfaction that would render the forum-selection clause unenforceable. The only case plaintiff cites from a court within the Seventh Circuit is *Cutter v. Scott & Fetzer Company*, 510 F.Supp. 905 (E.D.Wis.1981), in which, not surprisingly, the district court invalidated a forum-selection clause. Cutter, who was a distributor of the defendant's products, had originally sued in Wisconsin state court; the defendant subsequently removed the case to federal court. The court found that the parties had not bargained over the terms of the forum-selection clause, which, the court said, was "contained within the six pages of single-spaced boilerplate language". *Id.* at 908. Further, the court found a disparity of bargaining power between the two parties. This Court believes, however, that a significant feature of *Cutter* is that the plaintiff sued under the Wisconsin Fair Dealership Law, which was intended "to promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis". *Id.* (quoting Wis.Stat. § 135.025(2)(a)). The *Cutter* court said, "It is likely that a court in this district [in Wisconsin] is better prepared to consider a case under the Fair Dealership Law than is a court in Ohio". *Cutter*, 510 F.Supp. at 908. Nonetheless, the court noted that it would not presume to hold that a clause of this type would never be upheld when contained in a contract of this nature, nor even that a claim based on the Fair Dealership Law could only be litigated in a Wisconsin court. *Id.* at 909. After considering all of

the circumstances, however, the court found that the better course would be to refuse to apply the forum-selection clause in the *Cutter* contract. *Id.*

In contrast to the district court in Wisconsin, a consideration of all the circumstances led the District Court for the Northern District of Illinois to enforce a forum-selection clause in *Friedman v. World Transportation, Inc.*, 636 F.Supp. 685 (N.D.Ill.1986). The *Friedman* decision recognized that "[w]hile *The Bremen* was an admiralty case, set in an international context, its teachings are not limited to such cases". *Id.* at 689. "Lower federal courts have consistently applied *The Bremen* analysis to cases involving only domestic parties and causes of action other than admiralty." *Id.* In *Friedman*, the court gave little credibility to the plaintiff's contention that the contract was the product of "overweening ·bargaining power". *Id.* at 690. The plaintiff was a sophisticated investor to which the *Bremen* exceptions did not apply. "While the court should be wary of enforcing 'boilerplate' language...., this factor carries little weight where the party is sophisticated and can deal at arm's length and where the other *Bremen* factors do not apply." *Id.* at 690. Friedman did not carry his heavy burden to show that enforcement of the forum-selection clause would for all practical purposes deprive him of his day in court.

In *Clinton v. Janger*, 583 F.Supp. 284 (N.D.Ill.1984), the court found at least one, if not all, of various forum-selection clauses to be reasonable and dismissed the case without prejudice. The court discussed the considerations applicable in determining whether a contractual clause is reasonable: "(1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; and (4) the location of the parties and witnesses participating in the litigation." *Id.* at 289. The court considered these factors in addition to those from the *Bremen* case such as "the inconvenience to the parties of any particular location; and

whether the clause was equally bargained for." *Id.*

In the case at bar, L.A. Pipeline raises the spectre of unreasonableness by pointing to the comparative size of itself and of Texas Eastern. A disparity in size, however, does not automatically mean that Texas Eastern secured the plaintiff's bid in an improper fashion, nor does it mean that defendants' bargaining power was necessarily overweening. From the information before the Court, the bid process appears typical. L.A. Pipeline does not allege that Texas Eastern forced it to enter into the contract. Plaintiff received all of the information pertaining to the project in advance of submitting a bid. It apparently had both the time and the opportunity to question the provisions.

Plaintiff's failure to question is not to be held against defendants. Defendants had no duty to anticipate every question a ·potential bidder might have. Plaintiff maintains that "the Defendants were in a position where they could supply 'take it or leave it' language which the Plaintiff would either have to accept, or forego the contract". Memorandum of L.A. Pipeline at 17. Plaintiff has not demonstrated, however, that it was unable to secure other contracts or that it was anything other than a typical contractor with the same knowledge and sophistication of bidding procedures as other contractors.

Plaintiff's surprise in discovering the forum-selection clause, though regrettable, is not the fault of Texas Eastern. The language of the clause is not the legalese of typical boilerplate and is readily understandable. Although the clause was not in bold type, it was not disguised or buried in fine print; it appeared, double-spaced, as did the other provisions of the "General Conditions" section. That section contained paragraphs that defined terms, specified the laws and regulations to be observed, and set forth policy and procedure on a number of matters. The fact that plaintiff was "completely unaware", Memorandum of L.A. Pipeline at 16, of the forum-selection clause can only be ascribed to plaintiff's own neglect in reading the doc-

uments. The "General Conditions" contained several important sections which any contractor bidding on the project should have studied carefully. Apparently, the plaintiff failed to do so.

Plaintiff states further that it is a small corporation "which in recent years has experienced serious financial set backs, which has placed it in the position where it is attempting to literally survive. It is clear that in such a situation, the Plaintiff would not be in a position to run the risk of losing a contract in the hundreds of thousands of dollars simply to dispute contractual provisions which would hopefully never have to be used. In this case, the Plaintiff was unaware that the contractual provision even existed". Memorandum of L.A. Pipeline at 19. This statement reveals more about plaintiff's past judgment and hasty procedures than it does about defendants' purported overweening bargaining power. After receiving the documents and submitting its bid, L.A. Pipeline reaped the benefit of securing the project, something it freely pursued, yet now that the parties are at odds, plaintiff refuses to acknowledge that, as in most contracts, it made some concessions to its detriment. The plaintiff may have acted in haste, but "[i]n the absence of fraud or duress, a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed". *Comprehensive Accounting Corporation v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985). L.A. Pipeline offers no evidence of fraud or duress. Plaintiff must take responsibility for its own lack of negotiation. Plaintiff's allegations of disparity in size and overweening bargaining power fail to persuade the Court that the forum-selection clause should be disregarded.

Plaintiff next contends that "the forum-selection clause is unreasonable and unenforceable in that the transactions occurred in the State of Indiana and virtually all of plaintiff's witnesses are much closer to the State of Indiana". Memorandum of L.A. Pipeline at 20. The construction may have occurred in Indiana, but defendants state that the work at the site performed by the plaintiff has been redone by another con-

tractor and the ground has been restored to its original condition. Affidavit of Michael C. Stall at 3, para. 4. The majority of plaintiff's witnesses may be closer to Indiana, but such is not the case with respect to the majority of Texas Easterns' witnesses, most of whom are in Texas. Moreover, plaintiff has shown through its inclusion of the Sworn Statement of Mr. Jim Hewitt, attached as Exhibit C to the Memorandum of L.A. Pipeline, that in addition to Texas Eastern's own employees, at least two people with first-hand knowledge of the facts reside in Texas. These include Hewitt, a welding inspector and resident of Juaquin, Texas, and Mark Laney, a contractor with Laney, Incorporated, from Tomball, Texas. According to the *Bremen* case, a party seeking to escape his contract has the burden of showing that: "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court". 407 U.S. at 18, 92 S.Ct. at 1917. Plaintiff has failed to convince the Court of such a degree of inconvenience.

Moreover, other factors weigh in favor of a transfer to Texas. The Contract Documents state that Texas law governs the contract. General Conditions at 8–9. In this instance, the Court agrees with the District Court of the Northern District of Illinois, which said that "justice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law". *Heller Financial, Inc. v. Shop–A–Lot, Inc.,* 680 F.Supp. 292, 296 (N.D.Ill.1988). In addition, the Court does not find a strong public policy in favor of deciding this case in Indiana as opposed to Texas. Unlike the *Cutter* case in which a Wisconsin statute played a prominent role, the present case is a typical contractual dispute, capable of resolution in a Texas district court. *Id.* at 296. Nor does the Court believe the enforcement of the forum-selection clause will serve to deprive plaintiff of its day in court. Plaintiff has not demonstrated that the conduct of these proceedings in Texas will result in a level of inconvenience that would argue against a transfer.

Plaintiff's last contention is that "the forum-selection clause is ambiguous, and as such, it must be construed against the drafter and may not be applied in a mandatory fashion". Memorandum of L.A. Pipeline at 23. This contention is meritless. Plaintiff attempts to torture the plain meaning of the clause. The presence of the language "[a]ny and all actions ... shall ... be heard ... in Harris County, Texas" makes Texas, at the election of the defendants, not a permissive, but the exclusive forum state for this dispute. *Cf. Walter E. Heller & Co. v. James Godbe Co.*, 601 F.Supp. 319 (N.D.Ill.1984). The Court discerns no ambiguity in the clause and rejects plaintiff's attempts to obfuscate the language of the provision.

### CONCLUSION

The Court finds that transfer of this action to the District Court for the Southern District of Texas is proper. Nevertheless, the choice between the alternatives of dismissal or transfer under 28 U.S.C. § 1406(a) is best made by the plaintiff who, for tactical reasons or to facilitate an immediate appeal of this ruling, may prefer dismissal. Therefore, the Court GRANTS defendants' Motion and ORDERS that this action be DISMISSED without prejudice unless the plaintiff, within 10 days from the date of this Entry, files in the Clerk's Office a Notice of Assent to Transfer. Upon the timely filing of such Notice, this action shall instead be TRANSFERRED to the District Court for the Southern District of Texas.