The **STEWART ORGANIZATION, INC.**, a corporation; **Walter H. Stewart, and James S. Snow, Jr.**, Plaintiffs-Appellees,

v.

**RICOH CORPORATION**, a corporation, **Ricoh of America, Inc.**, a corporation, Defendants-Appellants.

No. 85–7231.

United States Court of Appeals, Eleventh Circuit.

Feb. 23, 1987.

Tjoflat, Circuit Judge, specially concurred and filed an opinion in which Kravitch and Anderson, Circuit Judges, concurred.

Godbold, Circuit Judge, dissented and filed opinion in which Vance, Hatchett, Clark and Edmondson, Circuit Judges, concurred.

---

Ralph H. Yeilding, Bradley, Arant, Rose & White, Scott M. Phelps, Birmingham, Ala., for defendants-appellants.

Joseph W. Letzer, Janet L. Humphreys, F.A. Flowers, III, Burr & Forman, Birmingham, Ala., for plaintiffs-appellees.

Before RONEY, Chief Judge, GODBOLD, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON, Circuit Judges, and TUTTLE *, Senior Circuit Judge.

PER CURIAM:

This case was taken *en banc* to consider whether a freely negotiated contractual "choice of forum clause" is enforceable in diversity actions in federal court when the forum state considers such clauses to be violative of state public policy. The district court in Alabama refused to enforce the clause because it was of the opinion that state law governed the enforceability of a forum selection clause. Alabama law deems such clauses contrary to public policy. We reverse, holding that forum selection clauses present procedural questions to be resolved by federal law independent of forum state policy.

The Stewart Organization, Inc., a closely held corporation in Birmingham, Alabama, filed this breach of contract action in the United States District Court for the Northern District of Alabama against Ricoh Corporation, a nationwide manufacturer of copy machines with headquarters in New Jersey and significant corporate operations conducted in Manhattan. The contract, a dealer sales agreement for Ricoh manufactured products, contains both choice of law and choice of forum clauses with the latter clause providing that the courts in New York City, the Borough of Manhattan, would have "exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy."

The district court refused to enforce this contractual agreement and asserted jurisdiction over the case. A panel of this Court reversed, holding that the contract is enforceable as a matter of federal law, and that the Alabama law which would hold such contracts invalid as a matter of public policy was inapplicable.

The threshold question is whether federal or state law governs the enforceability of a forum selection clause. The panel opinion chronicles the difficulties the Supreme Court has had in attempting to handle the difficult question of which law, state or federal, will govern various aspects of the decisions of federal courts sitting in diversity. *Stewart Organization, Inc. v. Ricoh Corp.*, 779 F.2d 643, 645–47 (11th Cir.1986).

■ Our decision as to the choice of forum clause boils down to whether these two parties may choose the courts of Manhattan as the appropriate venue to try the controversy arising from this contract. Employing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) as

---

* TUTTLE, Senior Circuit Judge, has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. 46(c).

the guide, we hold that venue in a diversity case is manifestly within the province of federal law. In *Hanna,* the Supreme Court determined that to the extent that Congress has enacted federal procedural rules (and implicitly federal statutes governing federal court procedure), the question is governed by federal law. Noting the important federal interests supporting the use of federal law, the *Hanna* court observed:

> Although this Court has never before been confronted with a case where the applicable Federal Rule is in direct collision with the law of the relevant State, courts of appeals faced with such clashes have rightly discerned the implications of our decisions.
>
> One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules. The purpose of the Erie doctrine, even as extended in York and Ragan, was never to bottle up federal courts with 'outcome-determinative' and 'integral-relations' stoppers—when there are 'affirmative countervailing [federal] considerations' and when there is a Congressional mandate (the Rules) supported by constitutional authority. *Lumbermen's Mutual Casualty Co. v. Wright,* 322 F.2d 759, 764 (C.A. 5th Cir.1963).

*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules.

\*   \*   \*   \*   \*   \*

To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act.

*Hanna,* 380 U.S. at 472–74, 85 S.Ct. at 1144–46 (footnotes omitted).

■ Under *Hanna,* federal law, not Alabama law, must be applied to determine the effect of forum selection clauses. This decision is dictated by both statute and binding precedent. Venue is a matter of federal procedure for several reasons. As to statutory law: *First,* Congress has specifically provided, by statutory enactment, rules of venue to govern federal district courts in diversity actions. 28 U.S.C.A. §§ 1391, *et seq.* By providing specific provisions rather than allowing rules of venue to be governed by state common law, the statute makes clear that Congress considered this a question appropriately governed by federal legal standards. *Second,* Congress has approved the adoption of Fed.R.Civ.P. 12(b)(3) and 41(b), federal procedural rules that direct federal courts as to the principles involved in deciding questions of venue. As the panel stated in reflection on these rules:

> If venue were to be governed by the law of the state in which the forum court sat, the federal venue statute would be nugatory. Nor would there be any legitimacy to the Federal Rules that govern certain aspects of venue, for they would tread on state prerogatives. *Hanna* clearly rejected this notion.

As to case law: a year before *Hanna* was decided, the Supreme Court in *National Equipment Rental v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), considered a diversity case analogous to the instant case. Michigan residents leased farm equipment from a New York-based company. The contract contained in fine print both choice of forum and choice of law clauses, both favoring New York. The Szukhents did not read this provision. The Court held this clause enforceable because "it is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court...." *Id.*

at 315–16, 84 S.Ct. at 414. While the central issue in the case was the propriety of another clause designating a New York agent for service of process, the Court upheld the clause in all respects without reference to either New York or Michigan law. *Id.*

The second case, *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), although not controlling because it arose under an admiralty statute creating exclusive federal jurisdiction, is nevertheless instructive with respect to the growing judicial approval of choice of forum clauses. The Court noted:

> [f]orum-selection clauses have historically not been favored by American courts. Many courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court. Although this view apparently still has considerable acceptance, other courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view, advanced in the well-reasoned dissenting opinion [from the circuit court's decision] in the instant case, is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances. We believe this is the correct doctrine to be followed by federal district courts sitting in admiralty.... The choice of [the] forum [in the present case] was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.

*Id.* at 9–12, 92 S.Ct. at 1912–14 (footnotes omitted).

Similarly, in *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231 (11th Cir.1985) (per curiam), a panel of this Court considered in diversity a contractual forum selection clause that referred the case to Brazil. There, the court held that because the clause was ambiguous as to whether it vested venue solely or concurrently in Brazil, an American court could hear the suit. The analysis regarding the enforceability of the clause, however, turned on the reasonableness principles set forth in *The Bremen*. There is no reason not to apply *The Bremen* test to domestic cases. Indeed, the Second Circuit did precisely this in a case similar to the instant one. In *Bense v. Interstate Battery System of America*, 683 F.2d 718, 721–22 (2d Cir.1982), the Second Circuit Court of Appeals expressly declined to use Texas venue law, which disfavored forum selection clauses, to undo a contractual agreement.

■ Applying federal law to this question, the inquiry is whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*. There the Supreme Court identified two factors that might justify refusing to enforce a clause. First, "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15, 92 S.Ct. at 1916. At first glance, this appears to support The Stewart Organization's argument that the choice of forum clause should not be enforced because the Alabama courts have deemed such clauses as violative of public policy. *See Redwing Carriers, Inc. v. Foster*, 382 So.2d 554, 556 (Ala.1980). A closer look at *Redwing* reveals, however, that the Alabama policy is for the protection of the jurisdiction of the state courts rather than the protection of the state's citizens. The *Redwing* court held:

> We consider contract provisions which attempt to *limit the jurisdiction of the courts of this state* to be invalid and unenforceable as being contrary to public policy. (emphasis added).

The Supreme Court of Alabama would not seem to be concerned with the protection of the jurisdiction of the federal district courts located in the state. Indeed, if a contract sought to require litigation in a federal court in Alabama, it can be presumed the agreement would be unenforcea-

ble in an Alabama state court. Since this case will be tried in federal court, the protection of state court jurisdiction is not involved. There are simply no federalism concerns in deciding which federal court will try a case of federal jurisdiction. New York law will govern the underlying dispute. The parties, by the terms of the contract, have agreed to this. Under *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the resolution of the choice of forum question should not affect the substantive outcome of the case. Both New York and Alabama would enforce the contract in this regard and apply New York law.

A second factor which might justify refusal to enforce a forum selection clause would be "if the chosen forum is *seriously* inconvenient for the trial of the action." *The Bremen*, 407 U.S. at 16, 92 S.Ct. at 1916 (emphasis in original). The party opposing the clause must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id.* at 18, 92 S.Ct. at 1917.

The Stewart Organization has failed to meet this heavy burden of proof. First, and most importantly, The Stewart Organization will not be deprived of its day in court. Although it may be more expensive for it to do so, the record does not show that Mr. Stewart or The Stewart Organization is unable to afford the costs of litigating this case in Manhattan. Second, there is no merit to The Stewart Organization's argument that the contract should be held void because it is a product of fraud and overreaching. They argue that Ricoh possessed superior bargaining power and that Mr. Stewart was pressured into signing this contract by a pushy salesman. Mr. Stewart, however, is a certified public accountant of fifteen years standing and is a senior partner in a major Birmingham firm. He is a knowledgeable, sophisticated and successful businessman, participating in several ventures that have produced multi-

million dollar profits. He purchased a failing local copying business and took it from $750,000 indebtedness to sales of 1.8 million in one year. The record reflects an "arm's-length negotiation by experienced and sophisticated businessmen, and [because there is absence of] some compelling and countervailing reason it should be ... enforced by the court [ ]." *The Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914.

The final issue to be addressed is whether this forum selection clause is sufficiently broad to require the transfer of all claims to a New York court. The district court was concerned that this clause would "not control the forum for trying those counts or causes of actions which are not contractual in nature, so that a transfer of the causes insofar as based on claims of breach of contract would simply split the controversy between forums and waste judicial resources." This refers to the claims of breach of warranty, fraud, and the antitrust claims.

The district court's concern is ill-founded for two reasons. *First*, it is clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer—manufacturer relationship. The contract refers to *any* "case or controversy arising under or in connection with this Agreement." This includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract. In *Bense*, the Second Circuit read the language of a forum selection clause that encompassed actions arising "directly or indirectly" from the contract as permitting the court to order transfer of the entire case. 683 F.2d at 720. This principle is sound because it promotes a more orderly and efficient disposition of the case in accordance with the parties' intent. This is consistent with the Supreme Court's directive in *The Bremen* to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements. Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law.

For the reasons foregoing, we find the choice of forum clause in this contract is in all respects enforceable generally as a matter of federal law and specifically within the confines of this case. The judgment of the district court is accordingly RE-VERSED and this case is REMANDED with instructions to transfer this action to an appropriate court in the City of New York and the Borough of Manhattan.

REVERSED and REMANDED.

TJOFLAT, Circuit Judge, specially concurring, in which KRAVITCH and ANDERSON, Circuit Judges, concur:

I concur in the court's judgment, directing the district court to transfer this case to the United States District Court for the Southern District of New York. I write separately, however, because I disagree with the majority's analysis of the questions this appeal presents. In my view, we must decide whether the district court erred by refusing to consider the parties' choice-of-forum clause in passing on the defendant's motion to transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a) (1982).[1] If the court should have considered the clause, we must then decide whether it would have been an abuse of discretion not to transfer this case. The district court concluded that the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), precluded it from giving any effect to the choice-of-law clause because Alabama forbids its courts from honoring such provisions. I believe that the *Erie* doctrine presents no bar and that the district court should have taken the clause into account in deciding the section 1404(a) motion. I also believe that the facts in this case make it clear that the district court would have

abused its discretion if it refused to transfer this case.

## I.

### A.

Historically, the law has accorded a plaintiff the right to choose the forum in which to litigate his case. This right, however, is subject to two limitations. First, the plaintiff's right to select a forum is confined to those forums where he can obtain jurisdiction over the defendant. Second, the plaintiff's right is restricted to those courts where venue is proper. A plaintiff, whose cause of action is based on state law and who can bring his suit in more than one state, will sue in the state whose conflict-of-laws rules will produce the most favorable rule of decision. If the conflict-of-laws rules of each of these states would ultimately call for the same rule of decision, then the plaintiff will choose the state most convenient for him.

What I have said also applies when the plaintiff decides to bring his state law claim to federal court, invoking its diversity of citizenship jurisdiction. The doctrine laid down by *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and reinforced in *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), guarantees him that the federal court will apply the same conflict-of-laws rules and the same rule of decision as would the courts of the state in which it sits.

Recognizing that another federal court might be a more suitable place to try a case than the court the plaintiff chooses, Congress passed a statute, the Act of June 25, 1948, 62 Stat. 937 (codified as amended at 28 U.S.C. § 1404(a) (1982)),[2] authorizing a

---

**1.** 28 U.S.C. § 1404(a) (1982) states as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**2.** Prior to the enactment of section 1404(a), federal courts could dismiss a case for *forum non conveniens* reasons, even if venue was proper. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67

S.Ct. 839, 91 L.Ed. 1055 (1947). A dismissal on *forum non conveniens* grounds could effectively bar a plaintiff's opportunity to proceed with his claim, as when the statute of limitations in the more convenient forum had completely run. *See Norwood v. Kirkpatrick,* 349 U.S. 29, 31–32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). By permitting district courts to transfer cases they might otherwise have dismissed, section 1404(a)

district court to transfer a civil action to another district "[f]or the convenience of parties and witnesses, in the interest of justice," if venue is otherwise proper in the transferee district. Through this law, Congress increased the efficiency of the federal court system. In doing so, it gave the district courts the discretion to override the plaintiff's traditional right to select his forum. *See* Reviser's Note, 28 U.S.C. § 1404(a).

Section 1404(a) does not indicate explicitly whether, in a diversity case, the substantive law of the transferor forum or the transferee forum should provide the rule of decision. The *Erie* doctrine, which requires a federal court to apply the substantive law of its forum state, would seem, at first blush, to mandate that the transferee court look to the substantive law of *its* forum state. Thus, if a case were transferred from a district in State "A" to a district in State "B," the trial judge would look to the conflict-of-laws rules of State "B," rather than State "A," to find the rule of decision. In doing so, the judge would frustrate the plaintiff's right to select the conflict-of-laws rules applicable to the case by giving that right to the defendant who obtained the section 1404(a) transfer. This frustration of the plaintiff's right to dictate the applicable rule of decision would be the same as that which occurred prior to *Erie*, when a defendant removed a case from state court to federal court. In sum, if a transferee court applied the substantive law of its forum state, it would thwart *Erie*'s goal of preventing the "accident" of diversity of citizenship jurisdiction from leading to a different substantive result on the merits of a case contested in a federal, rather than a state, forum.

The Supreme Court solved this problem in *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Analyzing the purposes of section 1404(a), the Court found that Congress did not intend that a defendant obtaining a transfer " 'get a change of law as a bonus for a change of venue.' " *Id.* at 636, 84 S.Ct. 819 (footnote omitted). The court therefore held that when a defendant successfully moves to have a case transferred, the transferee court should apply the same substantive law that the transferor court would have applied, not the substantive law of the forum state of the transferee court. *See generally* Note, *Choice of Law in Federal Court After Transfer of Venue,* 63 Cornell L.Rev. 149, 151–59 (1977).

B.

The preceding discussion illuminates two basic points relevant to the issues before us. First, the federal district court in which a plaintiff brings his state law claims will apply the substantive law of the forum state, resorting first to its conflict-of-laws rules, to decide the merits of the claims. Second, although the court may transfer the case to a district in another state, the trial judge will apply the law of the transferor's forum. Accordingly, a transfer has no effect on a plaintiff's ability to "shop" for the most favorable applicable law.[3] In the present case, therefore, transferring the case from the Northern District of Alabama to the Southern District of New York will have no effect on the outcome. The court in New York will apply Alabama law to decide whether to abide by the parties' choice-of-law clause and, if Alabama does not recognize such a provision, it will apply Alabama's conflict-of-laws rules to discover what state's law should provide the rule of

mitigates the harsh consequences a plaintiff might suffer by bringing his action in a proper, but inconvenient, forum.

3. I am perplexed by Judge Godbold's concern that a difference between federal and state court treatment of forum selection clauses will lead to "the kinds of forum shopping … deplored in *Erie.*" Post at 1077; *see also Stewart Org., Inc. v. Ricoh Corp.,* 779 F.2d 643, 651 (11th Cir.1986) (Godbold, J., dissenting), *vacated,* 785 F.2d 896

(11th Cir.1986). The forum shopping that disturbed the *Erie* Court was the ability of a plaintiff to get an entirely different result in his case, depending on whether he brought it in state or federal court. As I demonstrate in the text, the *Van Dusen* rule, requiring the transferee court to apply the same law that the transferor court would have applied, eliminates Judge Godbold's concern.

decision. Similarly, the court in New York will follow the Federal Rules of Civil Procedure, just as would the district court in Alabama. Thus, recognizing that a section 1404(a) transfer will not affect the outcome of this case, I turn to the issue of what effect the parties' choice-of-forum clause should have had on the district court's decision whether to transfer this case.

## II.

## A.

The Stewart Organization, Inc. (Stewart) and Ricoh Corp. (Ricoh) negotiated a contract at arms-length. The contract included a provision stating that any disputes arising out of the contract would be litigated in Manhattan and that New York law would govern the interpretation of the contract.[4] When a dispute did arise, Stewart chose to sue Ricoh in the United States District Court for the Northern District of Alabama, where jurisdiction and venue were proper.[5] Under the *Erie* doctrine, Alabama law would determine the outcome of Stewart's state law claims. If the district court found that Alabama law would honor the contract's choice-of-law clause,

New York law would, of course, dictate the disposition of Stewart's state law claims.

Ricoh, relying on the contract's forum selection clause, moved the district court to either dismiss the case for improper venue, under 28 U.S.C. § 1406(a) (1982),[6] or to transfer the case to the Southern District of New York, under 28 U.S.C. § 1404(a) (1982). Because Ricoh does business in the relevant judicial district in Alabama as well as New York, the Northern District of Alabama constituted a proper venue. *See* 28 U.S.C. § 1391(b) & (c) (1982). The district court therefore properly denied Ricoh's section 1406(a) motion to dismiss the case. Seizing on ambiguous language in an Alabama case that refused to enforce a choice-of-forum clause, *Redwing Carriers, Inc. v. Foster*, 382 So.2d 554 (Ala.1980), the district court also denied Ricoh's motion to transfer. The court read this language as declaring choice-of-forum agreements null and void and concluded that it was bound by *Erie* to ignore the clause. Because he doubted his conclusion, the district judge certified to this court the question of whether he should have transferred this case.[7] We accepted jurisdiction.

---

**4.** That provision states as follows:

    18. *General Provisions*

    18.1 Dealer and Ricoh agree that this Agreement, and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. Dealer and Ricoh agree that any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York [i.e., the United States District Court for the Southern District of New York], shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy.

    The choice-of-forum provision must be read against the background of the Alabama rule, pronounced in *Redwing Carriers, Inc. v. Foster*, 382 So.2d 554 (Ala.1980). The effect of that rule, *see infra* Part II.C., is to create the following exception to the choice-of-forum clause: if Stewart sues Ricoh *and* a resident defendant in Alabama state court, thus precluding Ricoh from removing the case to federal court, the state court will ignore the choice-of-forum clause and proceed to litigate the case.

**5.** Stewart's complaint contains federal antitrust claims, in addition to its state law claims against

Ricoh. Ricoh does business in Alabama and New York, making venue for all of Stewart's claims statutorily proper in both the Northern District of Alabama and the Southern District of New York. *See* 28 U.S.C. § 1391(b) & (c) (1982); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3818 (2d ed. 1986).

**6.** 28 U.S.C. § 1406(a) (1982) provides as follows:

    **Cure or waiver of defects**

    (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**7.** 28 U.S.C. § 1292(b) (1982) allows a district court to certify an order in a civil action that although not normally immediately appealable, involves "a controlling question of law as to which there is substantial ground for difference of opinion" and an appeal from which might materially advance the conclusion of the litigation. The former Fifth Circuit held that section 1292(b) was an appropriate method for appellate review of section 1404(a) decisions. *See*

The panel, observing that federal venue questions are controlled by federal law, concluded that federal law should determine the enforceability of the parties' forum selection clause. The panel found no policy reason for condemning those agreements if bargained for at arms-length, as the agreement was in this case. The panel accordingly reversed the district court's decision and ordered it to transfer this case to the Southern District of New York. We took this case en banc, vacating the panel's opinion, in order to address the questions of whether, and, if so, to what extent, a district court should consider a fairly bargained for choice-of-forum clause when deciding whether to transfer a case to another forum pursuant to section 1404(a).

### B.

Section 1404(a) permits a district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice." Here, the fact that the parties entered into a valid contract creates a conclusive presumption that Ricoh has already compensated Stewart for any inconvenience Stewart and its witnesses [8] might suffer from trying this case in New York. Furthermore, I find it self-evident that the interests of justice would best be served by respecting a valid contract.

The Supreme Court considered the effect of a choice-of-forum clause in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In that case, the respondent, owner of a sea-going drilling rig, contracted with the petitioner, owner of *The Bremen*, to have petitioner tow the rig across the Atlantic Ocean. The contract contained a provision that any dispute would be litigated in a specified court, in London, England. Shortly after petitioner began towing the rig, bad weather damaged the rig. The respondent sued the petitioner in admiralty in the United States District Court for the Middle District of Florida, and the petitioner sought to have the case dismissed on *forum non conveniens* grounds, relying on the choice-of-forum clause.

The district court gave no effect to the clause, concluding that to do so would permit the parties to oust the court of its admiralty jurisdiction, and denied the motion. The court of appeals affirmed. *Zapata Off-Shore Co. v. The Bremen*, 446 F.2d 907 (5th Cir.1971) (en banc) (per curiam) (adopting panel decision located at 428 F.2d 888 (5th Cir.1970)), *rev'd*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Supreme Court, reversing, ordered the forum selection agreement enforced, unless the respondent "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. Phrasing the question as whether the district court should have "give[n] effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause," *id.* at 12, 92 S.Ct. at 1914, the Court formulated a test for determining the enforceability of forum selection

---

*Continental Grain Co. v. Federal Barge Lines, Inc.*, 268 F.2d 240, 241–43 (5th Cir.1959), *aff'd*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) (in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981). In addition, Ricoh could have obtained appellate review of the district court's section 1404(a) decision by seeking a writ of mandamus. *See Roofing & Sheet Metal Servs. v. La Quinta Motor Inns*, 689 F.2d 982, 987–89 (11th Cir.1982).

**8.** In theory, the parties had two categories of witnesses in mind when they negotiated the choice-of-forum provision. The first category includes witnesses over whom the respective parties exercised control and could therefore bring to trial. Ricoh has compensated Stewart for its inconvenience in transporting those witnesses to trial in New York City. The second category of witnesses consists of those not under a party's control, residing beyond the reach of a subpoena calling for the witness' appearance at trial. *See, e.g.,* Fed.R.Civ.P. 45(e). The testimony of those witnesses would have to be obtained by deposition, the expense of which would be substantially the same whether the parties were litigating in Manhattan or elsewhere.

clauses in individual cases: a choice-of-forum agreement will bind the parties, unless the party opposing its enforcement can establish that the provision was the product of duress, fraud, or some other conduct the common law traditionally recognized as a defense to contract enforcement. *See id.* at 15, 92 S.Ct. at 1916. Moreover, such an agreement will bind the parties even if, at the time plaintiff institutes suit, the court happens to be the most convenient forum. The Court reasoned that when parties freely negotiate an agreement containing a forum selection clause, one party cannot avoid that clause merely because it has become inconvenient for him to abide by it. *See id.* at 16, 92 S.Ct. at 1916–17.

Although the Court in *The Bremen* was not addressing the effect of a forum selection agreement in a section 1404(a) context, I believe that its reasoning should guide our decision. The choice-of-forum clause in the contract between Ricoh and Stewart was freely and fairly negotiated by experienced business professionals. Stewart has neither alleged nor shown the presence of fraud, duress, misrepresentation, or other misconduct that would bar the clause's enforcement. Nor has Stewart demonstrated that because of intervening and unexpected occurrences between the contract's formation and the filing of suit, the contract's purpose would be frustrated if the district court implemented the forum selection provision. Thus, this court is faced with a freely negotiated provision requiring the parties to litigate their disputes in a state or federal court in Manhattan. The law of contracts presumes that Ricoh has already compensated Stewart, through lowered costs or some other method, for any inconvenience that Stewart or its witnesses might suffer by trying this case in New York. I believe that section 1404(a)'s remaining concern, whether a transfer would be "in the interest of justice," also indisputably favors transferring this case. Where, as here, the non-movant has not shown that it would be unjust to honor a forum selection clause that it has freely given, "the interest of justice" requires that the non-movant be held to its promise.

## C.

Despite the compelling reasons for the district court to give weight to the parties' forum selection clause and transfer the trial of this case, Stewart argues that the State of Alabama has a substantive rule, announced in *Redwing Carriers, Inc. v. Foster,* 382 So.2d 554 (Ala.1980), against enforcing such clauses, and that the *Erie* doctrine required the district court to apply that rule in passing on Ricoh's section 1404(a) motion to transfer. I believe that Stewart misunderstands the policy underlying the Alabama rule; a more thorough analysis of that policy reveals that the district court was free, under the *Erie* doctrine, to consider the forum selection clause.

In *Redwing Carriers,* the Supreme Court of Alabama refused to enforce a contractual provision calling for the litigation of disputes in Tampa, Florida. Concluding that the provision, if enforced, would completely divest the Alabama courts of jurisdiction, the court held the clause invalid as being contrary to public policy. The Alabama court reached its conclusion by noting that just as parties may not confer jurisdiction on an Alabama court, "contract provisions which attempt to limit the jurisdiction of the courts *of this state*" are unenforceable. *Id.* at 556 (emphasis added).

*Redwing Carriers* should have no effect on the outcome of this case; it does not provide a rule of decision. Rather, the case instructs Alabama's courts on the exercise of their jurisdiction. Thus, its rule is not binding on the federal courts under *Erie.* The supreme court's emphasis that its holding was designed to protect the jurisdiction of Alabama's courts makes clear the public policy its decision enforces. Nowhere in its opinion did the court indicate that forum selection agreements are unenforceable because they are inherently the result of coercive bargaining or overreaching. A fair reading of the *Redwing Carriers* decision simply cannot lead to the conclusion that it

was handed down to protect Alabama citizens from sly negotiators; the decision merely prevents litigants from tying the jurisdictional hands of the state courts. This concern is, of course, irrelevant to the exercise of a federal district court's jurisdiction and the management of its docket.

To hold that the rationale of *Redwing Carriers* applies in a section 1404(a) context would also raise supremacy clause concerns.[9] Alabama obviously cannot control a federal court's exercise of its own jurisdiction. In enacting section 1404(a), Congress instructed the federal courts to transfer civil actions whenever they deem transfer appropriate. The supremacy clause prohibits Alabama from frustrating Congress' intent. To apply talismanically the *Redwing Carriers* rule would permit a state to shackle, in an unconstitutional manner, the discretion Congress gave the federal judiciary, and worse, would do so without advancing any state interest.

### III.

In the proceeding before us, the ultimate outcome of the litigation will be the same whether the case is transferred or retained. For purposes of applying substantive law, both the court in the Northern District of Alabama and the court in the Southern District of New York would act as though it were an Alabama state court. For purposes of applying procedural rules and the law of evidence, both courts are identical; each is bound to follow the federal practice. Thus, this is not a situation where the outcome of the case may differ because of the "accident" of diversity; the transfer of this case will have no greater consequence than placing the district judge, to whom this case is now assigned, in New York City rather than in Birmingham.

The parties in this case freely negotiated a reasonable choice-of-forum provision. Stewart, who brought this case in federal court, raises no meritorious defense to the clause other than an erroneous argument that we are required to ignore the agreement because Alabama would do so. I can find no valid reason that should have prevented the district court from considering the forum selection clause. Moreover, I conclude that not to transfer this case would be an abuse of discretion. I therefore join the majority's decision to reverse the district court and to order this case transferred to the Southern District of New York.

GODBOLD, Circuit Judge, dissenting, in which VANCE, HATCHETT, CLARK and EDMONDSON, Circuit Judges, concur:

I readopt the reasons for disagreement set out in my dissenting opinion to the panel opinion, 779 F.2d 651–53, and add the following comments.

The en banc court, as did the panel, treats this matter as a dispute over "appropriate *venue.*" This mischaracterization serves to oversimply the issue and to make possible a decision reached on the basis of characterization rather than by analysis.

Of course, this is a dispute over "venue" in the sense of "where shall the case be tried?" But this states only part of the question, which is: "where shall a diversity case be tried when the parties, by a choice of forum clause, have selected a place for trial (New York), and the forum state (Alabama) considers such a clause to be violative of its public policy, and under the federal statute, 28 U.S.C. § 1391, venue is appropriate in both Alabama and New York?"

The fallacy in characterizing the problem as "just a dispute over venue" is that it leads the en banc court, as it led the panel, to conclude that because there is a federal venue statute the dispute is a procedural matter and therefore a federal matter. Of course, there are federal venue statutes. The particular statute, 28 U.S.C. § 1391, identifies the courts that Congress—mind-

---

9. The supremacy clause states that the "Constitution, and the Laws of the United States ... made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

ful of the convenience of the parties, (*Citizens & Southern National Bank v. Bougas,* 434 U.S. 35, 44 n. 10, 98 S.Ct. 88, 94 n. 10, 54 L.Ed.2d 218 (1977)—has defined as *suitable to hear diversity cases.* This and other venue statutes do not address the question of whether or under what circumstances a party may antecedently agree to proceed in one or another of the federal judicial districts that under the federal statutes are "suitable." *This case is not about what court is suitable. It is about an agreement to choose between suitable courts.*

The matter before us is not, as stated by the panel and restated by the en banc court, a matter of negating the federal venue statute. The venue statute is fully vindicated. Venue exists in both courts. The issue before us concerns a contract between parties relating to which of two acceptable federal places of trial (as established by the federal venue statutes) shall be utilized. No federal law answers this question. The bargain reached by the parties choosing between two courts each defined as "suitable" under 28 U.S.C. § 1391 is of no federal concern. It is a matter of state contract law, and the forum state's policy should be recognized.

The en banc court suggests that Alabama policy is directed to protecting the jurisdiction of its courts rather than protecting its citizens. The only way the state's interest can be vindicated is through parties' raising the issue. As a result of the en banc decision the state courts will go in one direction and the federal another, which takes litigants back to the kinds of forum shopping described in my dissent, 779 F.2d at 651, and deplored in *Erie.*