Ira L. SNIDER, Plaintiff,

v.

LONE STAR ART TRADING CO., INC., a Texas corporation; Art Realties Trading Co., Inc., a Texas corporation; Samuel Shuman: London Arts, Inc., a Michigan corporation; David N. Zelmon: Arnold Klein: Ivo Kirschen: Eugene Schuster and Monis Schuster, Jointly and Severally, Defendants.

Civ. A. No. 86–CV–72652–DT.

United States District Court, E.D. Michigan, S.D.

Aug. 25, 1987.

Mayer–Morganroth, Southfield, Mich., for Snider.

Richard A. Rossman, Detroit, Mich., for Klein.

Noel A. Gage, John K. Parker, Ivy O. Giller, Southfield, Mich., for Lone Star, Art Realties and Shuman.

Richard E. Zuckerman, Thea Marie Sankiewicz, Troy, Mich., for London Arts, Zelmon and Schusters.

### MEMORANDUM OPINION
### AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

Two sets of Defendants have filed a total of eight motions,[1] all of which challenge

---

1. One group of Defendants consists of Samuel Shuman, Lone Star Art Trading Co. Inc., and Art Realties Trading Co. This group will at times be referred to as the Lone Star group. The other group, represented by different counsel, includes London Arts Incorporated, David N. Zelmon, Eugene Schuster and Monis Schus-

the "Memorandum Opinion and Order" that was entered by this Court on April 9, 1987, 659 F.Supp. 1249.[2] Plaintiff, Ira L. Snider, has brought suit under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and under the Michigan common law of fraud. In essence, Snider alleges that he was sold certain art plates which were worth far less than had been represented to him by the Defendants. The Court will address each pending motion separately.

### 1. *The Lone Star Group's Motion for Reconsideration*

The Lone Star group seeks reconsideration of two parts of the Opinion. First, they challenge this Court's view that Snider's claim is not outside the relevant statute of limitations. Second, the Lone Star group claims that this Court did not give effect to a forum selection clause in one of six purchase agreements.

Pursuant to Local Rule 17(m) of the Eastern District of Michigan, this Court can grant reconsideration when the movant:

> shall not only demonstrate *a palpable defect* by which the Court and the parties have been misled but also show that *a different disposition of the case must result* from a correction thereof.

(Emphasis added). Because the Lone Star group has not satisfied this stringent burden, the motion must be denied.

### a. *The Forum Selection Clause*

In the April 9th Opinion, this Court declined to give effect to a forum selection clause[3] in the Purchase Agreement between Snider and Defendant Lone Star for a number of reasons. First, the Court held that the scope of the forum's selection clause with one defendant clearly did not encompass a RICO action against multiple defendants. Memorandum Opinion at 1257. The Court also concluded that the enforcement of this clause would not be appropriate here under the laws of Michigan or Texas or the standards which were enumerated in *The Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

The Lone Star group contends that the April 9th Order failed to incorporate the teachings of *Friedman v. World Transport*, 636 F.Supp. 685 (N.D.Ill.1986), in which the court enforced a contractual forum selection clause between the plaintiff and one of the several defendants whom he subsequently sued in a RICO action. Thereafter, the court granted a motion to transfer venue to the district which had been referred to in the clause.

There are several major problems with any reliance on *Friedman*.[4] The first problem with *Friedman* is that it is only a district court case and it is almost directly contradicted by the only appellate court to have addressed a similar issue. In *Farmland Industries v. Frazier–Parrott Commodities*, 806 F.2d 848–852 (8th Cir.1986), the Court of Appeals for the Eighth Circuit refused to enforce a forum selection clause which was found in a contract between plaintiff and only one of the defendants whom he had sued for fraud. It found that the lawsuit was broader than the intended scope of the clause. As a result, the clause, which called for the transfer or dismissal of the action, was not given any enforcement.

The *Farmland* court expressly adopted the reasoning of the district court:

> The court found that
>
> [t]his matter involves more than a dispute between plaintiff, Heinold, and those associated with Heinold. Plaintiff has alleged an elaborate scheme of fraud

---

ter. It appears that Arnold Klein and Ivo Kirschen have different attorneys.

**2.** In the Memorandum Opinion and Order, this Court denied their Motions to Dismiss.

**3.** This clause specified that a lawsuit based on the Purchase Agreement shall be brought in Harris County, Texas.

**4.** In discussing the flaws in *Friedman*, this Court will also be passing on the mistaken assumptions in the Lone Star group's other arguments regarding the forum selection clause.

involving not only Heinold and individuals associated with Heinold, but also involving other individuals outside the securities brokerages, sham corporations, and other matters not subject to the agreement between plaintiff and Heinold.

*Farmland Industries, Inc. v. Frazier–Parrott Commodities,* No. 86–0135–CV–W–8, slip op. 7–8 (W.D.Mo. June 17, 1986).

The district court stated that Farmland's causes of action do not all arise directly or indirectly from the agreement and that Farmland could not have anticipated having to litigate these claims in Illinois. The court also found that Farmland's multiple claims were not in tended to evade the forum selection clause. We agree.

*Id.*

This reasoning is identical to that which was employed by this Court in its April 9th Opinion:

> This Court notes only one of the Six Purchase Agreements had such a provision. Equity, as well as an efficient administration of justice, militate against requiring a RICO claim involving six Defendants (and not a claim in contract) to be brought in the location which is specified in a contract with one of the Defendants.

Memorandum Opinion at 1257.

The *Friedman* court never adequately addressed these issues. Instead, it gave an overly rigid formalistic analysis, asserting that the RICO action arose out of the purchase agreement and named the seller as a defendant. 636 F.Supp. at 691. Thus, the Court there opined that Friedman was bound by the agreement to sue the seller wherever the clause specified. This reasoning ignores the fact that there is no evidence in this record to support a claim that the forum selection clause was included in contemplation of a RICO action in which individuals, in addition to Lone Star, were allegedly engaged in fraud.

The Defendants seek to distinguish *Farmland* by saying (1) that the case involved a fiduciary relationship whereas here there was an arms-length transaction and (2) the Eighth Circuit Court of Appeals relied on a Missouri public policy. These arguments are not persuasive because the Court determined that "... we hold that ... the suit is broader than the forum selection clause." *Id.* at 852. Thus, the limited scope of the forum clause is obviously the key to the holding—not the other arguments.

▇ Even if this Court ignored *Farmland,* and accepted *Friedman* on its own terms, the reasoning therein would require this Court not to enforce the forum selection clause. The *Friedman* court repeatedly emphasized that enforcing the forum selection clause was reasonable because the clause was contained in the "controlling document," i.e., the central document in the dispute. 636 F.Supp. at 691. It was in the "one document which logically connects all the defendants to the plaintiffs in this action." *Id.* The court attempted to distinguish *Lulling v. Barnaby's Family Inns, Inc.,* 482 F.Supp. 318, 321 (E.D.Wisc.1980) by stating that the forum selection clause was not enforced there because it was not in "the basic contract" between the parties.

However, in the instant cause and unlike *Friedman,* the forum selection clause is not in the one central document. The clause was inserted in one of six equally important Purchase Agreements. There is no basis for giving that document more controlling weight than the other five documents with regard to the appropriate venue for a RICO action. Thus, *Friedman* mandates that the clause not be enforced.

Defendants also argue that the legal standards of *The Bremen, supra,* should govern this issue. They then assert that the fundamental defect in this Court's position is that it did not impose *The Bremen*'s stringent burden of proof on Snider to show why the clause should not be enforced. Defendants are incorrect.

In retrospect, this Court's only error in its April 9th Opinion was to accept the assertions of Plaintiff and Defendants that the Michigan law regarding forum selection clauses was applicable. However, this

Court did not, and does not, (1) accept Defendants' somewhat changed assertion on reconsideration that *The Bremen* sets forth the governing standards as a matter of federal law or (2) governs Michigan law. Moreover, any error in following Michigan law is harmless, and would not justify any modification of the April 9th Order.[5]

The reasons why *Bremen* does not set forth the governing standards have been accurately stated by the Third Circuit Court of Appeals in *General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir.1986), in which it was stressed that (1) the enforceability of a forum selection clause was a contract question and (2) state law applied in its interpretation. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court of Appeals for the Third Circuit held:

> We must correct the assumption that federal courts are bound as a matter of federal common law to apply *The Bremen* standard to forum selection clauses. The construction of contracts is usually a matter of state, not federal, common law. Federal courts are able to create federal common law only in those areas where Congress or the Constitution has given the courts the authority to develop substantive law, as in labor and admiralty, or where strong federal interests are involved, as in cases concerning the rights and obligations of the United States. *See Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–43, 101 S.Ct. 2061, 2066–68, 68 L.Ed.2d 500 (1981). Only rarely will federal common law displace state law in a suit between private parties. As the Court in *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), observed, in a suit between private parties where federal common law is sought to be applied, "normally the guiding principle is that a *significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown*. [The question whether] latent federal power should

be exercised to displace state law is primarily a decision for Congress." 433 U.S. at 31–32, 97 S.Ct. at 2494–95 (emphasis added by the *Miree* Court) (citing *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)).

> The interpretation of forum selection clauses in commercial contracts is not an area of law that ordinarily requires federal courts to create substantive law.

*Id.* at 356–357.

The court noted that federal common law was used in *The Bremen* because the Supreme Court sat in admiralty. Federal law was also employed in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1982) because that case involved forum selection clauses that implicated the Arbitration Act which, in turn, reflected a strong Congressional policy in favor of the enforcement of arbitration clauses. In contrast, there is no evidence of a federal preference for or against the enforcement of a forum selection clause in those contracts which may have some connection to RICO actions. If anything, the RICO venue provision evinces Congress' desire to give to a plaintiff the authority to bring suit whenever the transactions occurred. 18 U.S.C. § 1965(d). *Shearson American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which has been relied upon by the Defendants, is also inapposite since it involved the Arbitration Act. Since no federal statute which evinces a preference for the enforcement of a forum selection clause is apparent in this record, state law must govern with regard to this contract clause.

The Third Circuit's approach in *General Engineering Corp.* was expressly relied on by the Eighth Circuit Court of Appeals in *Farmland*. The *Farmland* Court relied on the Third Circuit in determining that state law, at a minimum, was highly relevant when attempting to determine whether a forum selection clause should be en-

---

**5.** This Court's earlier use of Michigan law is of no significance because the *Farmland* type rationale controls here. Significantly, this Court also noted that it would have ruled the same way under Texas law or *Bremen*. Memorandum Opinion at 1257 n. 10.

forced. 806 F.2d at 852. Thus, at least one other appellate court has shown leanings toward the view of the Third Circuit. Defendants, however, rely heavily on *Stewart Organization, Inc. v. RICOH Corp.*, 810 F.2d 1066, 1070 (11th Cir.1987) (en banc) to support their view that federal common law should apply.

■ ▇ A close reading of *Stewart* makes it far from clear it stands for that proposition. Three reasons support this conclusion. First, of the thirteen judges who decided *Stewart en banc*, only five of them joined the *per curiam* opinion. That *per curiam* is the only one of the three opinions which unambiguously held that the federal common law controls the enforceability of a forum selection clause.[6]

Second, in a stinging concurrence, five other judges took issue with the authors of the *per curiam*. Chief Judge Godbold, writing on behalf of his four colleagues and in reference to his earlier dissent in the panel opinion, said that the controversy was not about the various federal venue statutes. He reasoned:

> *This case is not about what court is suitable. It is about an agreement to chose between suitable courts.*

*Id.* at 1077 (emphasis in original). Thus, state law governs the construction of the agreement under *Erie.*

Third, in *Stewart*, the district court originally faced a motion to transfer venue. This motion involved federal procedural laws. Here, only a motion to dismiss, which was based on a contract clause, was pending. Thus, for all of these reasons, this Court finds *General Engineering Corp., supra,* to be persuasive. Hence, state law governs.[7]

▇ The decision in *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), indicates that the choice of law rules of the forum state govern the law to be applied in interpreting a contract. As Defendants readily acknowledge, the contract between Snider and London Arts contains a provision which states that the contract shall be construed in accordance with Texas law. Courts in Michigan have generally allowed parties to choose the law which shall govern any interpretation of the agreement, in the absence of public policy considerations. *See e.g. Sheerin v. Steele*, 240 F.2d 797 (6th Cir.), *cert. denied*, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957). Accordingly, Texas law governs the enforceability of this one forum selection clause.[8]

▇ Unlike *The Bremen*, Texas law contains a strong presumption against the enforceability of contractual forum selection clauses. *See e.g. Fidelity Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972); *Travelers' Assn. v. Branum*, 212 S.W. 630 (Tex.1919); *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust*, 579 S.W.2d 300 (Tex.Ct.App. 1979); See generally Annotation, "Validity of Contractual Provision Limiting Place or Court in which Action may be Brought," 56 A.L.R.2d 300, 310 (1957) (Texas courts regularly invalidate provisions). The Court in *Fidelity* expressly stated:

> We hold that the fixing of venue by contract, except in such instances as permitted by Article 1955, § 5 is invalid and cannot be the subject of private contract.

*Id.* at 537. None of the instances permitted by Article 1955 apply here. Thus, under Texas law, the broad RICO venue stat-

---

6. Three other judges wrote a concurring opinion which said that the reasoning of *Bremen* "should guide our decision." *Id.* at 1075. However, this concurrence is somewhat ambiguous because it also cited *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to justify an inquiry into Alabama substantive law. *Id.* Thus, it is not clear whether these judges saw the issues as solely a matter of federal procedural law or state substantive law. The remaining five judges, including Chief Judge Godbold, strongly believed that state law governed.

7. Any statement by the Sixth Circuit Court of Appeals in *InFlight Devices Corporation v. Van-Dusen Air, Inc.*, 466 F.2d 220, 234 n. 24 (6th Cir.1972), which suggests that *Bremen* applies to all domestic choice of forum issues was clearly dicta and is, at best, a preliminary and tentative suggestion ("it would seem ...").

8. This does not constitute a ruling on what law shall be applied in interpreting any of the other contracts.

utory section takes precedence over a venue provision in a private concontract.[9]

This Court need not rely on Texas law or *Farmland* alone, however, in making its decisions. Assuming *arguendo* that *The Bremen* is the correct standard, the Court believes that reconsideration of its prior decision would still not be warranted. In *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708, 712 (D.R.I.1983), the court set forth an exhaustive list of factors which should be used in determining whether to enforce forum selection clauses under *The Bremen*. Courts are to determine if the party who resists enforcement has shown the unreasonableness of the selection clause on the basis of a "totality of the circumstances." This Court's now contested decision contained no "palpable defect" based on these factors.

▪ Although the Defendants insist that Snider has no such proof, they never explicitly disagreed with his contention that all of the transactions were conducted in Michigan (Factor 3). The contracts also appear to have been executed in Michigan (Factor 2). Except for Samuel Shuman and Ivo Kirschen, the parties reside in Michigan. In addition, the art plates are in Michigan, which suggests that this is a substantially more convenient place for trial (Factor 6).

It is true that many courts have said that in order to vitiate a forum selection clause under *The Bremen*, the claim of fraud must relate to the inclusion of the clause itself, *Scherk*, 417 U.S. 519 at n. 14, 94

S.Ct. at 2457 n. 14. The Court of Appeals for the Eighth Circuit in *Farmland* did note, however, that it would be unfair to enforce such a clause where the entire contract was tainted with fraud because it would force the party "to comply with an agreement which never would have been made had the existence of the fraud been known." *Farmland*, 806 F.2d at 851–2. Although *Farmland* acknowledged that a fiduciary relationship had been involved, this Court believes that the allegations of fraud within the instant cause must be given some mention as an equitable consideration. *See e.g. DeoLalikar v. Murlas Commodities*, 602 F.Supp. 12, 15 (E.D.Pa. 1984) (the court found it relevant that "plaintiff has not *alleged* that he was induced by any act of fraud ... by the defendant ... to enter into the agreement" (emphasis added)).

Lastly, the forum selection clause appears inconspicuously on the sixth page of a six page agreement which contains numerous complex provisions. There is no evidence it was ever the subject of specific bargaining between the parties. Thus, this clause must be given less weight than if it had been a fundamental part of the transaction.

Although there are several factors [10] that may weight in favor of the Defendants, this Court does not find that its earlier decision contained a "palpable defect" since the predominate factors do weight against enforcement.[11]

9. This reliance on state law provides another basis for distinguishing *Friedman*. *Friedman* expressly took note of two cases where courts used state law to determine enforceability and distinguished them by noting that state law did not apply there. 636 F.Supp. at 690 n. 4. Since this Court believes state law does apply, *Friedman* is inapposite. Also, even if Michigan law did apply, this Court believes that its analysis of that law in the April 9th Opinion was correct. Evidence that Michigan forum selection law does not follow *The Bremen* is best shown in the drafting of M.C.L.A. § 600.745. *See Michigan Law Revision Commission—7th Annual Report* (1972) at 76 ("Although the *Zapata* decision may give too much deference to the parties' agreement, section 3(3) of the Act may give too little").

10. Texas law will control any contract interpretation issue which may arise. However, since this is fundamentally a RICO action, issues relating to the interpretation of a contract must be viewed as being secondary in significance.

11. Lone Star contends that *The Bremen* requires courts to enforce forum selection clauses unless enforcement would virtually result in a denial of access to the courts. However, that part of *The Bremen* is explicitly based "In such circumstances ..." as were present in that case. 407 U.S. at 18, 92 S.Ct. at 1917. In *The Bremen*, the court found the clause was "vital" to an international transaction. *Id.* at 14, 92 S.Ct. at 1915. There is no evidence that the clause here was vital or bargained over. Thus, this Court interprets *The Bremen* as did the court in *D'Antuono*, as generally requiring a more lenient totality of

Thus, for all of these reasons, the Court holds that reconsideration regarding the forum selection clause must be denied. The *Farmland* rationale, *Friedman*, Texas law, and even *The Bremen* require this result.

### b. The Statute of Limitations

On June 22, 1987, the United States Supreme Court authoritatively determined that the four year statute of limitations provision which is applicable to Clayton Act civil enforcement actions, 15 U.S.C. § 15, applies in RICO civil enforcement actions. *Agency Holding Corproation, et al v. Malley Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Snider brought this suit in 1986. However, the last plates were sold in 1980. Thus, in reliance upon *Malley Duff,* Defendants argue that the Court must reconsider its earlier decision which determined that there was no statute of limitations problem.

First, there is no problem with applying Malley Duff "retroactively," even though the initial Complaint was filed prior to June 22, 1987. In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-7, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971), the Supreme Court determined that an order of the court should not be applied retroactively if:

1. The decision establishes a new principle of law either by overruling clear past precedent or by being a case of first impression;
2. The purpose and effect of the new rule would be defeated; and
3. Equity counsels against such application because of hardship.

■ Here, retroactive application is acceptable because the appellate courts were split on the issue in controversy. Moreover, the Sixth Circuit had not ever ruled on which Michigan statute of limitations should be applied in a RICO case. Hence, neither party had any definite expectation overturned nor will either party suffer any unfair hardship as will be shown. Thus, retroactive application is appropriate. *See*

factors approach which still places the burden upon the party who resists the enforcement of

*Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105 (5th Cir.1987).

Nevertheless, Defendants' reliance on *Malley Duff* does not close this matter. In *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1945), the Supreme Court held that every federal statute of limitations has an exception which tolls its running when there is a claim of fraudulent concealment of the cause of action. In the Order, which is now being contested by the Defendants, the Court mentioned this issue in noting that Snider had affirmatively asserted his lack of knowledge about the alleged fraud until 1985 when the IRS conducted an audit.

In a discussion of Michigan statute of limitations law, however, Defendants argue that Snider's assertions are inadequate. They say that he must allege and show affirmative acts of concealment of the fraud—not just the fraud—to obtain any benefit from the tolling. They assert that he has failed to meet this burden.

In *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147, 1154 (10th Cir.1981), the court held that the Clayton Act statute of limitations was tolled because the fraud, which furnished the basis for the cause of action, was of such nature as to conceal itself and was therefore "inherently self concealing." In that case, tolling occurred even without the additional affirmative acts of concealment of the cause of action. Of course, tolling will only occur in such self-concealing cases where the alleged victim of fraud has acted with "due diligence." *Campbell v. Upjohn Co.,* 676 F.2d 1122 (6th Cir.1982).

On its face, this case appears to be one where the self-concealing description could apply. For example, one of the best ways for an art investor to verify the value of a work of art is through an independent appraisal. Snider alleges that the appraisers were a part of the fraudulent scheme. Thus, the scheme allegedly concealed any means of discovering the cause of action.

the clause.

Nonetheless, the Defendants also argue that the Plaintiff signed a variety of warnings which accepted the risk of this investment. They argue that no tolling is permitted, especially when Snider's obvious awareness of the risks was involved. Thus, they claim he acted without due diligence.

Yet, the Court notes that the issue of whether a reasonable person acted with due diligence regarding fraud often raises difficult factual questions that can preclude the entry of a summary judgment on the basis of the statute of limitations. *See e.g. Byers v. Burleson*, 713 F.2d 856 (D.C.Cir. 1983). Moreover, most of the tolling issues have only been briefed for the first time on reconsideration. This provides an unusual procedural posture for resolving them.

In addition, Snider has failed to specifically plead fraudulent concealment or due diligence in his Complaint, as amended. The Sixth Circuit Court of Appeals in *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975), concluded that a party, who seeks to toll the statute of limitations, must plead fraudulent concealment with particularity. However, the absolute necessity of such a pleading here could not have been apparent to Snider prior to *Malley Duff.* Moreover, motions to dismiss are only granted when it appears that there are substantive facts under which a plaintiff could not prevail. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, it would not be appropriate to dismiss Snider's claims for his failure to plead fraudulent concealment under these circumstances.

Based on the content of the current briefs, this Court cannot determine if Snider did or did not use due diligence. Moreover, neither party has given much discussion about the actual details of the agreements. Snider has made some vague allegations about the promises that were made to him. Defendants, however, say that Snider was promised little. This Court cannot easily determine whether Snider acted with due diligence without more knowledge about the transaction that took place.

■ On the basis of the current record, the Defendants have not conclusively shown a "palpable defect" that must result in a different disposition of this issue. Nonetheless, this Court is also convinced that the unusual procedural posture in which the tolling issue has arisen has precluded adequate briefing by the parties.

Thus, this Court will give Snider a period of twenty days from the date of this Order in which to amend his Complaint in an attempt to cure the statute of limitations problems which have been raised by *Malley Duff.* Thereafter, the Defendants may submit a new dispositive motion which will encompass the statute of limitations issue and address the adequacy of the fraudulent concealment allegations. The Defendants should not, however, submit this motion without being able to fully appraise this Court about what they believe due diligence would have required of Plaintiff and why his actions supposedly did not reflect the requisite prudence.

### 2. *London Arts' Motion for Reconsideration*

London Arts makes three arguments for reconsideration. First, they argue that Snider's Complaint fails to set forth a "pattern" of racketeering activity since it only alleged one criminal episode.

■ London Arts' position has several problems. First, it is not necessarily true that Snider only alleged one scheme. He may have alleged six schemes. Memorandum Opinion at 1255. Moreover, London Arts fails to acknowledge that several circuit courts have recently determined that one scheme can be enough in certain circumstances. *See e.g. Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986); *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986). This Court agrees with *Morgan* and *Ianniello*.

London Arts next argues that this Court rejected a common understanding (to wit, that a RICO defendant cannot be the RICO enterprise). This is an erroneous characterization of the April 9th decision. This Court held:

Nevertheless, this Court does not need to choose between these two interpretations of this issue. *Even accepting Defend-*

*ants' interpretation* for the purpose of resolving this dispute, *the Complaint can be construed to state an enterprise which is separate and distinct from them.*

Memorandum Opinion at 1253 (emphasis added).

Finally, London Arts also raises the statute of limitations issue. This Court has already addressed that question. Thus, London Arts' Motion for Reconsideration must be denied for the same reasons.

3. *Lone Star's Motion to Dismiss Third Amended Complaint or in the Alternative Strike Allegations that are Inconsistent with Memorandum Opinion and Order of April 9, 1987 and London Arts' Motion to Strike Inconsistent Allegations*

Because these two motions are made on virtually identical grounds, they will be treated together. Lone Star argues that Snider has failed to plead an enterprise which consists of an association of all of the Defendants, as this Court directed in its April 9th Opinion. This statement is incorrect. Paragraphs 32 and 38 clearly so plead, and are sufficient for the purposes of these motions on this narrow issue. Lone Star's argument (to wit, that Paragraph 32 is a very long sentence) raises questions of grammar and/or sentence structure at best. But it does not justify a dismissal.

On the other hand, this Court agrees with Lone Star and London Arts that Paragraphs 36(B) and 36(E), as well as 36(C) and 39 should be stricken from Count I pursuant to *Fed.R.Civ.P.* 12(f).[12] Thus, Defendants Motion to Strike those paragraphs is granted.

4. *Lone Star's Motion to Modify Order to Certify Question for Interlocutory Appeal and London Arts' Motion to Modify Order to Certify Questions for Interlocutory Appeal*

London Arts has raised three kinds of questions that it seeks to have this Court certify to the United States Court of Appeals for the Sixth Circuit. Pursuant to 28 U.S.C. § 1292(b), this Court may certify one of its orders for immediate appeal when of the opinion:

[t]hat such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

London Arts has urged this Court to certify for appeal its holding that a pattern of racketeering may be satisfied by one scheme. The initial problem with certifying this issue is that it may not be a controlling question of law since there may well be more than one scheme here. Moreover, this Court believes that the Court of Appeals for the Sixth Circuit would follow the path which was taken by the Second and Seventh Circuit Courts of Appeals, both of whom found that one scheme can be enough, especially since there must be at least two predicate acts. In the absence of a likely reversal, this Court declines to certify this issue for appeal. *See e.g. USA-CO Coal Co. v. Carbomin Energy*, 550 F.Supp. 19 (W.D.Ky.1982) (likelihood of reversal determines whether to certify); *Kennard v. United Parcel Service*, 531 F.Supp. 1139, 1149 (E.D.Mich.1982) (court should certify where there is a high probability of error). Moreover, piecemeal appeals would cause unwarranted delays in this already protracted proceeding in which very little discovery has been conducted despite the passage of more than one year since the commencement of litigation.

London Arts also requests this Court to certify the issue of whether a RICO "enterprise" can be a RICO "person." As already mentioned, the holding by this Court did not go against conventional wisdom on this issue.

Finally, London Arts seeks a certification on the statute of limitations issue. How-

---

12. If Snider elects to amend his Complaint, as authorized by this Court, he may place variants of Paragraphs 36(B) and 36(E) in Count II and/or such other locations that are deemed to be appropriate.

ever, certification is no longer necessary since the Supreme Court has authoritatively resolved the issue. Questions about the accrual and tolling issues are well governed by the Clayton Act cases which were discussed earlier. The law in this area is clear and, thus, a certification is not necessary. More development of the facts through discovery is necessary in order for this Court to resolve the issue.

The only additional certification issue that has been raised by Lone Star is the forum selection issue. Because this Court had several independent grounds for deciding not to enforce the forum selection clause, it is not likely that the decision was in error or will be reversed on appeal. Thus, certification on that issue will also be denied.

5. *Lone Star's and London Arts' Motion to Stay Proceedings Ancilto Motion to Certify Questions for Interlocutory Appeal*

Because this Court has denied the Motions to Certify, there is no longer any need for a stay in this matter. Thus, these motions are denied.

IT IS SO ORDERED.